STATE of Iowa, Plaintiff-Appellee,

v.

Gregory BECKETT,
Defendant-Appellant.

No. 84–1954.

Court of Appeals of Iowa.

Dec. 18, 1985.

John P. Messina, Asst. Appellate Defender, for defendant-appellant.

Thomas J. Miller, Atty. Gen., Marcia Mason, Asst. Atty. Gen. and Gregory Biehler, Asst. Polk Co. Atty., for plaintiff-appellee.

Heard by OXBERGER, C.J., and SNELL, and SCHLEGEL, JJ.

SNELL, Judge.

At approximately 1:00 a.m. on April 29, 1984, the Polk County police were dispatched to the Woodside Golf and Country Club in response to the tripping of a silent burglar alarm at the clubhouse. When the first officer arrived at the clubhouse, he looked in a window and observed the defendant Gregory Beckett crawling on the floor. Other officers apprehended Beckett when he exited a second story window. An acquaintance of Beckett's named Mark Lawson was also taken into custody at the scene. A garbage bag full of cigarettes was found laying on the floor inside the clubhouse.

After their arrest, Beckett and Lawson were transported to the police station in the back of a police car. They were advised several times not to talk. However, Officer Boucher overheard Lawson make the following statement to Beckett: "Now, when we are being booked, be sure and tell them we are high on cocaine and we have been drinking." The officer observed that Beckett nodded his head in response to this comment. Beckett made no intoxication claims at booking or in the police station.

On May 31, 1984, Beckett was charged with second-degree burglary in violation of Iowa Code section 713.5 (1983). He filed a notice of intoxication defense on July 27. Beckett filed a pretrial motion in limine to challenge the admissibility of Lawson's statement through Officer Boucher which was denied. Beckett also made a hearsay objection at trial. Nevertheless, the trial court allowed the statement into evidence under the admissions exception to the hearsay rule pursuant to Iowa R.Evid. 801(d)(2)(B). The admissions exception was the prosecutor's theory of admissibility at trial.

At trial, Beckett testified that he had ingested alcohol, a substance later identified a barbiturate, hashish and large quantities of marijuana during the evening before his arrest. He claimed that he could not remember anything about his arrest or events preceding it.

The jury found Beckett guilty as charged. A motion for new trial was denied and Beckett was sentenced to an indeterminate ten-year term of incarceration.

On appeal, the sole issue raised by Beckett concerns the admissibility of Lawson's statement made in the police car. Beckett contends that the trial court abused its discretion by admitting the statement into evidence as an adopted admission by Beckett. He argues that instead the statement constituted inadmissible hearsay. The State asserts that the statement was properly admissible as an adopted admission and raises two new theories of admissibility that were not raised at trial; (1) that the statement was not hearsay because it was not offered to prove the truth of the matter asserted, and (2) that the statement was admissible as a coconspirator's statement.

Iowa R.Evid. 802 provides that "hearsay is not admissible except as provided by the Constitution of the State of Iowa, by statute, by these rules, or by other rules of the Iowa Supreme Court." Rule 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Not all extrajudicial statements constitute hearsay. Rule 801 expressly provides that admissions by a party-opponent are excluded from the hearsay rule and are, therefore, admissible at trial:

(d) Statements which are not hearsay. *A statement is not hearsay if*

\* \* \* \* \* \*

(2) Admission by party-opponent. *The statement is offered against a party and is* (A) his own statement, in either his individual or a representative capacity, or *(B) a statement of which he has manifested his adoption or belief in its truth,* or (C) a statement by a person authorized by him to make a statement concerning a matter within the scope of his agency or employment, made during the existence of the relationship, \* \* \* *or (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy.* (emphasis added).

If the hearsay rule can be found inapplicable under any theory, the trial court's ruling of admissibility of evidence will be upheld. *State v. Kidd,* 239 N.W.2d 860, 864 (Iowa 1976); *Porter v. Iowa Power and Light Co.,* 217 N.W.2d 221, 231 (Iowa 1974).

**Coconspirator.** The State argues that Lawson's statement is admissible under the "coconspirator" prong of Rule 801(d)(2). The State argues that Lawson's statement was made during the "concealment phase" of the conspiracy.

█ "When there is substantial evidence of a conspiracy, whether the offense charged is conspiracy or not, everything

said by any conspirator in furtherance of the common purpose is deemed to have been said in behalf of all parties to the conspiracy." *State v. Kidd,* 239 N.W.2d 860, 864 (Iowa 1976); *State v. Dewey,* 220 N.W.2d 629, 631 (Iowa 1974). Two conditions, then, must be met for this coconspirator rule to be applicable. First, the statement must have been made during the pendency of the conspiracy. Second, it must have been in promotion of the object or design of the conspiracy. *Kidd,* 239 N.W.2d at 864.

It is also well established, however, that not every extrajudicial statement by one coconspirator is admissible against his coconspirator. *United States v. Jackson,* 549 F.2d 517, 533 (8th Cir.1977). Both the "during pendency" and "in furtherance" requirements call for exclusion of admissions made after the conspiracy has terminated. McCormick, *Evidence* § 267 at 645 (2d Ed.1972).

■ The burden is upon the defendant to show that the conspiracy terminated before his coconspirator made the inculpatory statement. *Kidd,* 239 N.W.2d at 864. The time at which the conspiracy ends depends upon the particular facts of the case. *United States v. Silverstein,* 737 F.2d 864, 867 (10th Cir.1984). Generally, a conspiracy terminates when its central criminal purposes have been attained. *Krulewitch v. United States,* 336 U.S. 440, 442, 69 S.Ct. 716, 717, 93 L.Ed. 790, 793 (1949). The Iowa Supreme Court has determined that the conspiracy may continue into a concealment phase. *Kidd,* 239 N.W.2d 864. This extension of the duration of the conspiracy "beyond the commission of the principal crime to include concomitant and closely connected disposition of its fruits or concealment of its traces appears justifiable, as in the case of police officers engaged in writing up a false report to conceal police participation in a burglary or disposal of the body after a murder. However, attempts to expand the so-called 'concealment phase' to include all efforts to avoid detection have generally failed." McCormick, §§ 267 at 646.

■ While the Iowa courts have not had the opportunity to apply the coconspirator rule to postarrest statements, decisions from other jurisdictions applying identical coconspirator rules guide our analysis. The coconspirator rule is predicated upon the fact that such statements are an actual part of the criminal conduct.

It is our task to determine the object or central criminal purposes of the alleged conspiracy. *See United States v. Silverstein,* 737 F.2d 864, 867 (10th Cir.1984). Here, the only conspiracy that could be supportable by substantial evidence is a conspiracy to burglarize the Woodside Golf and Country Club. This central aim of the alleged conspiracy had ended in failure at the time Lawson's statement was made. In this situation any conspiracy which may have existed, terminated when the suspects were apprehended and arrested by the police. *See Krulewitch v. United States,* 336 U.S. 440, 442, 69 S.Ct. 716, 717, 93 L.Ed. 790, 793 (1949) (hearsay declaration attributed to coconspirator made after objectives of conspiracy failed and arrest); *United States v. Howard,* 752 F.2d 220, 229 (6th Cir.1985) ("A conspiracy is deemed to have ended when the last objective sought is achieved, when all coconspirators have been arrested, or when achievement of the objective has otherwise been rendered impossible."); *United States v. Poitier,* 623 F.2d 1017, 1020 (5th Cir.1980); *Village of New Hope v. Duplessie,* 231 N.W.2d 548, 550–51 (Minn.1975) (conspiracy ended by arrest so post-arrest incriminating · statements by coconspirator were not made in furtherance of alleged conspiracy). Lawson's incriminating declaration was made after the arrest and, therefore, was not made "during" or "in furtherance of" the conspiracy to commit burglary.

We conclude that in the present case there is no evidence in the record to support a finding that the duration of the conspiracy extended into a concealment phase or that Lawson and Beckett conspired to conceal or dispose of the fruits of the burglary.

**Adoptive Admission.** The State also asserts that the testimony of the officer was properly received on the ground that Beckett's nodding of his head in the face of Lawson's declaration, was an adoptive admission. Beckett, on the other hand, contends that the nodding of his head was too ambiguous to constitute adoption of Lawson's statement.

The Iowa Supreme Court in *State v. Kelsey*, 201 N.W.2d 921, 927 (Iowa 1972) established that silence alone is not sufficient to constitute an admission by an accused in a criminal prosecution. "That is, the admission must be adopted, rather than merely tacitly agreed to." *State v. Fingert*, 298 N.W.2d 249, 252 (Iowa 1980). Admissions by adoption or acquiescence can only be established by "the totality of circumstances viewed in terms of probable human behavior." *State v. Hamilton*, 236 N.W.2d 325, 330 (Iowa 1976). "The term adoptive admission is applied to evidence of the conduct of a party which manifests circumstantially the party's assent to the truth of a statement made by another person." McCormick, § 269 at 649. "It must be shown a person clearly and unambiguously assented to the statements of another before an adoptive admission comes into being." *State v. Menke*, 227 N.W.2d 184, 188 (Iowa 1975).

▮ In this case, the fact that Beckett nodded his head is the only factor which could support a determination that Lawson's statement constituted an admission by adoption. Furthermore, this case is an example of an alleged adoptive admission which is equivocal. At trial, Officer Boucher did not state whether Beckett's head nod was affirmative or negative in character, aggressive or slight.

The Minnesota Supreme Court faced a similar factual situation in *New Hope*. There, the defendant's response to an accomplice's incriminating postarrest statements was headnodding and laughter.

The Minnesota Supreme Court found that especially in criminal prosecutions nonverbal conduct must be unequivocal to constitute an admission. The court therein concluded:

> When hearsay accusations are sought to be introduced as evidence against a defendant in a criminal proceeding on grounds that the hearsay was "adopted" by defendant as an admission of his guilt, the trial court must first determine that the asserted adoptive admission be manifested by conduct or statements which are *unequivocal, positive,* and *definite* in *nature, clearly showing* that in fact defendant intended to adopt the hearsay statements as his own.

*New Hope,* 231 N.W.2d at 553.

The Minnesota Supreme Court's reasoning is persuasive for our present purposes given the situation Beckett faced at the time the alleged admission occurred. Lawson and Beckett had been placed under arrest and were being transported to the police station for booking. They both had been admonished by the officers to remain quiet. While the record shows that Beckett nodded his head after Lawson spoke, we do not know if Beckett was merely acknowledging Lawson's comment, was fearful to respond verbally after the officer's admonition of silence or simply chose to ignore Beckett's conversation. Furthermore, Beckett made no claims of intoxication at booking or at any time at the police station to demonstrate adoption of Lawson's suggested plan.

Given these circumstances, we cannot conclude that Beckett understood and unambiguously assented to Lawson's statement. Therefore, the testimony of Officer Boucher would not have been admissible as an adoptive admission.

▮ **Nonhearsay.** The State next contends that the trial court did not err in admitting Lawson's statement into evidence because the out-of-court assertion was not admitted to prove the truth of the matter asserted. The State argues that the prosecution was not trying to prove Beckett was intoxicated. Instead, the out-of-court assertion was offered to prove that Beckett's intoxication defense was raised as a result of the statement rather than

being based on any actual intoxication. The State reasons that the hearsay rule does not exclude evidence offered to prove the fact that a statement was made, rather than the truth of what was said.

In this case, whether Beckett was actually intoxicated or not when the burglary was committed was an intensely disputed issue at trial. The State offered Lawson's out-of-court assertion through Officer Boucher's testimony to prove that Beckett concocted his intoxication defense. For this purpose, the significance of the offered statement does not lie in the fact that it was made. The truth of what Lawson said was definitely in issue. Because Lawson was not available for cross-examination during Beckett's trial, the reliability of Lawson's out-of-court assertion is inherently suspect.

Therefore, we conclude that the testimony of Officer Boucher constitutes hearsay because it was introduced to prove its express assertion of fabricated intoxication. This testimony was also not admissible under any exception to the hearsay rule.

 Notwithstanding, we find that the admission of this hearsay was not prejudicial. Beckett took the stand and testified that prior to the commission of the burglary, he drank Canadian Club and beer, and ingested marijuana, hashish, and barbiturates. His defense was bolstered by the testimony of two witnesses—the woman with whom he spent the evening of April 28, 1984 and a pharmacist. All of this testimony was presented to the jury for its determination regarding veracity and the validity of Beckett's defense. The hearsay statement in dispute was minimally probative on any issue, particularly in light of its ambiguity. We, therefore, hold that the admission of this statement was harmless to Beckett's presentation of his defense.

AFFIRMED.