**STATE of Iowa, Appellee,**

v.

**Jason Allen PUFFINBARGER, Appellant.**

**No. 94–1498.**

Court of Appeals of Iowa.

Sept. 22, 1995.

John A. Pabst of the Pabst Law Firm, Albia, for appellant.

Thomas J. Miller, Attorney General, Robert P. Ewald, Assistant Attorney General, and Charles A. Stream, County Attorney, for appellee.

Considered by DONIELSON, C.J., and HAYDEN and CADY, JJ.

HAYDEN, Judge.

Shortly before 1 a.m. on December 12, 1993, four shotgun slugs penetrated the home of Jerry McLandsborough in rural Cedar, Iowa. Jenevieve McLandsborough heard the gunshots and looked out the front window. She saw the tail lights of a slow moving vehicle which then suddenly sped away. Jenevieve noted it was a full-sized car with a loud muffler. The McLandsboroughs placed a 911 call.

Shortly after the police received the 911 call, Officer Nord, driving northbound towards the Eddyville High School, met a car traveling southbound with a loud muffler. He turned around and followed the car to an Amoco gas station. Three men, Jeremy Nichols, Ronald Eakins, and Jason Puffinbarger, were occupants of the vehicle. Eakins was the driver. They gave Officer Nord and another officer permission to search the vehicle. The officers found a twelve-gauge shotgun, a sawed off twenty-gauge shotgun, and a regular twenty-gauge shotgun. They also found large quantities of ammunition. The twelve-gauge shotgun was loaded with four shells and was still warm as though it had recently been fired.

After the search, Nichols, Eakins, and Puffinbarger each gave statements to the police. Nichols made statements Puffinbarger shot the gun. Later at trial he testified his original statements were lies. Puffinbarger provided a written statement, claiming he got into Eakins' car in Kirkville and drove to Eddyville, where they were stopped by Officer Nord. Puffinbarger maintained at no time was a gun discharged from the car while he was a passenger. Eakins gave two written statements. In his first statement, Eakins claimed Puffinbarger stated he wanted to shoot at the McLandsboroughs and pressured Nichols into shooting one of the guns. In his second statement, Eakins indicated Puffinbarger and Nichols were the individuals who shot at the McLandsborough home. Both of Eakins' statements tend to exonerate him from any wrongdoing. He stated he told Nichols and Puffinbarger not to shoot the guns.

All three men were charged by trial information with terrorism and possession of an offensive weapon. Nichols, who was sixteen years of age, entered a plea bargain with the State whereby he was placed on probation in exchange for his testimony. At trial, Nichols testified he had been riding around with Eakins on the nights of December 11, 1993, drinking beer and shooting at traffic signs. He claimed later in the evening they picked up Puffinbarger, who sat in the back seat. While they were driving from Fremont toward Eddyville, the three men had a discussion about shooting the McLandsborough home. Puffinbarger objected to this testimony, claiming it was hearsay. The objection was overruled on the basis a conspiracy was proven placing the statements under the 801(d)(2)(E) exception to hearsay.

The State also attempted to introduce Eakins' written statements to police even though Eakins was not going to testify. Puffinbarger objected to admission of the written statements on the grounds they were cross-accusatory statements based on hearsay. Additionally, Puffinbarger argued admission of Eakins' statements violated his Sixth–Amendment right to confront a witness because Eakins did not take the witness stand. The objections were overruled, and

the written statements were introduced into evidence.

Following the close of the State's evidence Puffinbarger moved for a directed verdict and renewed an earlier motion to sever his trial from Eakins'. He also reasserted denial of his right to confront Eakins. Alternatively, he requested a limiting instruction stating the jury could only consider Eakins' statements in reference to Eakins' guilt or innocence. After the close of all evidence, the district court provided instructions to the jury. Puffinbarger requested instructions on lesser-included offenses. Lastly, he motioned for acquittal and a mistrial. All these motions were denied. The jury found Puffinbarger guilty as charged. The district court sentenced Puffinbarger as a forcible felon and imposed the mandatory minimum on each count. Puffinbarger appealed.

Puffinbarger argues: (1) the district court erred in admitting the cross-accusatory statements of Eakins because they are hearsay and also violated his Sixth Amendment right to confront a witness against him; (2) in the alternative, if the cross-accusatory statements were admissible, the district court should have granted his request for a limiting instruction regarding Eakins' statements; (3) the district court erred in admitting the statements of Jeremy Nichols because those statements were hearsay; (4) the district court should have given the jury an instruction on assault as a lesser-included offense to terrorism; (5) the district court should have granted his motion for judgment of acquittal; and, (6) the district court erred in sentencing him as forcible felon.

### I. Standard of Review.

██ Our review of Puffinbarger's Sixth Amendment claim is de novo. When constitutional safeguards are involved, the court is obliged to make its own evaluation of the totality of the circumstances. *State v. Baccam*, 476 N.W.2d 884, 885 (Iowa App.1991). With respect to all other issues, our review is for the correction of errors of law. Iowa R.App.P. 4. On evidentiary issues, we review for an abuse of discretion. *State v. Halstead*, 362 N.W.2d 504, 506 (Iowa 1985). In order to show an abuse of discretion, one

generally must show the court exercised its discretion " 'on grounds or for reasons clearly untenable or to an extent clearly unreasonable.' " *State v. Blackwell*, 238 N.W.2d 131, 138 (Iowa 1976) (quoting *Weeks v. Burnor*, 132 Vt. 603, 326 A.2d 138, 140 (1974)).

### II. Cross–Accusatory Statements by Eakins.

██ The district court admitted into evidence the two written statements of Puffinbarger's codefendant, Ron Eakins, implicating Puffinbarger in the shooting and referring to statements allegedly made by Puffinbarger. Eakins, however, did not take the witness stand and, consequently, was not subject to cross examination concerning the written statements. Puffinbarger asserts the written statements are inadmissible hearsay. He also argues the admission of the statements violated his Sixth Amendment right to confront witnesses against him because Eakins never took the witness stand. Puffinbarger argues the written statements should not have been admitted into evidence. Alternatively, he argues, if the statements were admissible, a limiting instruction should have been given instructing the jury to use the written statements only in determining Eakins' guilt or innocence.

██ **Hearsay.** When analyzed in accordance with the dictates of Iowa Rule of Evidence 801, Puffinbarger's contention Eakins' written statements are hearsay is correct, and the district court erred in admitting them. These written statements contained other statements allegedly made by Puffinbarger in Eakins' car on the night of the shooting. Such situations can be referred to as double hearsay or hearsay within hearsay. Where a hearsay statement includes a further hearsay statement, both statements must conform to a hearsay exception for the statement to be admissible. Iowa R.Evid. 805. *See State v. Williams*, 427 N.W.2d 469 (Iowa 1988). Consequently, in order for these written statements to be admissible, a hearsay exception must apply to the statements Puffinbarger made to Eakins in the car *and* to the written statements made by Eakins to police officers.

In this case, the first leg in the hearsay chain contains statements allegedly made by Puffinbarger to Eakins. These out of court statements were admitted to prove the truth of the matter asserted and, as such, are hearsay. The statements, however, fit under exception 801(d)(2)(A) as an admission by a party opponent. Puffinbarger made statements to Eakins implicating himself in the shooting.

The second leg of the hearsay chain is the written statements made by Eakins to police officers. The relevance of these written statements depends on the truth of the matters asserted and, as such, they are hearsay. This leg does not fit an exception to the hearsay rule because, despite the State's arguments, the statements (1) are not statements by a co-conspirator under 801(d)(2)(E) and, (2) are not admissions by a party opponent under 801(d)(2)(A).

■ Under 801(d)(2)(E), a statement is not hearsay if it is offered against a party opponent, and is a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy. Iowa R. Evid. 801(d)(2)(E). To admit a statement under this rule, the State must establish by a preponderance of the evidence: (1) a conspiracy existed; (2) the defendant and declarant were part of the conspiracy; and, (3) the declaration was made during the course and in furtherance of the conspiracy. *United States v. Escobar*, 50 F.3d 1414, 1423 (8th Cir.1995). The burden is on Puffinbarger to show the conspiracy terminated before Eakins made the inculpatory statements. *State v. Beckett*, 383 N.W.2d 66, 68 (Iowa App. 1985). Although we do not determine whether the first two requirements were met, we are certain the third was not met.

Eakins' written statements were not made during the course or in furtherance of a conspiracy. Although Iowa courts have held the conspiracy may continue into a concealment phase, *id.*, such is not the case here. A conspiracy ends where the central criminal purposes have been attained. *Id.* "A conspiracy is deemed to have ended when the last objective sought is achieved ..." or "when all co-conspirator have been arrested." *Id.* (quoting *United States v. Poitier*, 623

F.2d 1017, 1020 (5th Cir.1980)). A co-conspirator's incriminating statement following an arrest does not qualify under the co-conspirator definition because the statement was not in furtherance of the criminal act; rather, the conspiracy has terminated. *Id.* Although we will not make any decision as to whether a conspiracy existed, even if one did exist, the written statements by Eakins were not written "during" or "in furtherance of" the conspiracy to shoot the McLandsboroughs' home. The written statements were made after Eakins had been arrested and after the last objective was achieved. Consequently, the 801(d)(2)(E) exception to hearsay does not apply.

Under 801(d)(2)(A), a prior statement is not hearsay when offered against a party by his opponent when *the statement was made by the party against whom it is now being offered.* Iowa R. Evid. 801(d)(2)(A) (emphasis added). In the case at bar, the statements in question were statements *written by Eakins—not Puffinbarger.* Since Puffinbarger did not make the statements, they cannot be considered admissions by him. As such, the writings cannot be offered against Puffinbarger under this exception to hearsay.

■ The State could argue the written statements were offered into evidence against *Eakins* rather than *Puffinbarger.* If this was the case, the writings arguably fit into the 801(d)(2)(A) exception to hearsay as admissions by *Eakins* offered against Eakins, the party who made the statements. We find, however, these written statements were not admissions under 801(d)(2)(A). The statements were not admissions of Eakins' guilt because Eakins did not implicate himself in the statements. In fact, the statements exonerated Eakins from responsibility for the illegal acts committed while implicating his codefendant, Puffinbarger. The statements were not admissions by Eakins of his involvement in a conspiracy because the statements refute any such involvement on his part.

Admissions "are simply words or actions inconsistent with the party's position at trial, relevant to the substantive issues in the case, and offered against the party." McCormick

on Evidence, 4th Ed., Vol. 2, Ch. 25, p. 142. The alleged admissions by Eakins, however, were not inconsistent with the position Eakins took at trial. At trial Eakins still attempted to shift the blame to Puffinbarger. Lastly, it is important to note, Eakins' written statements do not contain any indicia of reliability. Eakins was under arrest when he made these statements and was attempting to exonerate himself. Admitting such unreliable statements into evidence rewards defendants by allowing them to produce evidence of their innocence and implicate co-defendants without being required to take the stand.

In summary, we determine the written statements by Eakins are not admissible because they are hearsay. The written statements contain double hearsay, the second link of which does not fit into an exception to the hearsay rule. The district court erred in admitting these statements. We reverse and remand for a new trial.

■ **Bruton Rule.** If the statements by Eakins could be construed as admission under 801(d)(2)(A), we would reach the same conclusion. Although these statements might be properly admissible against Eakins, there is no doubt they are not admissible against Puffinbarger. As stated above, the written statements are not admissible against Puffinbarger because he did not make the statements himself and the statements were not written "during" or "in furtherance of" a conspiracy. Such circumstances would present a *Bruton* situation. *See Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

In the typical *Bruton* scenario, a confession of a codefendant (in this case Eakins) is admissible into evidence against the codefendant because the confession is an admission by a party opponent under 801(d)(2)(A). However, no exception to the hearsay rule allows the statements to be used against the other codefendant (in this case Puffinbarger) who did not make the statements. The *Bruton* Court stated, "[T]he hearsay statement inculpating petitioner was clearly inadmissible against him under traditional rules of evidence, the problem arising only because the statement was admissible against the

declarant" (codefendant). *Id.* at 129 n. 3, 88 S.Ct. at 1624 n. 3, 20 L.Ed.2d at 480 n. 3. In other words, in the case at bar, if the statements are admissions by codefendant Eakins, they are admissible against Eakins but not Puffinbarger. Unfortunately, once the jury hears codefendant Eakins' written statements, they may be inclined to use them against Puffinbarger.

■ The *Bruton* rule holds a non-testifying codefendant's confession incriminating the other defendant is barred by the confrontation clause from admission into evidence at their joint trial. *Id.* at 137, 88 S.Ct. at 1628, 20 L.Ed.2d at 485. The *Bruton* Court acknowledged in many cases the jury can and will follow the trial judge's instructions to disregard admissions of a codefendant which implicate another defendant. *Id.* at 136, 88 S.Ct. at 1628, 20 L.Ed.2d at 485. In some situations, however:

> powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant, are deliberately spread before the jury in a joint trial. Not only are the incriminations devastating to the defendant but their credibility is inevitably suspect, a fact recognized when accomplices do take the stand the jury is instructed to weigh their testimony carefully given the recognized motivation to shift the blame onto others. The unreliability of such evidence is intolerably compounded when the alleged accomplice, as here, does not testify and cannot be tested by cross-examination.

*Id.* at 135–36, 88 S.Ct. at 1628, 20 L.Ed.2d at 485. In such circumstances, a limiting instruction is not an "adequate substitute for . . . constitutional rights," *id.* at 137, 88 S.Ct. at 1628, 20 L.Ed.2d at 485, and the statements should be excluded.

■ The briefs of Puffinbarger and the State argue over whether the *Bruton* rule applies in this case. The State makes two arguments *Bruton* does not apply. First, the State argues *Bruton* does not apply because a hearsay exception allows the statements to be used against Puffinbarger. The *Bruton* rule will only exclude the confession where there is no hearsay exception which allows

the nontestifying codefendant's (in this case Eakins') statement to be used against the other defendant (in this case Puffinbarger). *United States v. Kelley*, 526 F.2d 615, 620 (8th Cir.1975). In other words, *Bruton* only excludes the confession where no exception allows the statements to be used against Puffinbarger. As stated above, however, no exception to the hearsay rule allows the statements to be introduced against Puffinbarger. The writings were not admissions by Puffinbarger because he did not write the statements; and, the writings were not made in the course or in furtherance of a conspiracy because the conspiracy, if one existed, had already terminated. The only person against whom these written statements might be admissible is Eakins—not Puffinbarger. As such, *Bruton* applies to this situation.

■■■■ Second, the State argues *Bruton* does not apply because the rule is restricted to confessions and Eakins' statements are merely "admissions." We find this argument illogical. Under 801, both "confessions" and "admissions" are admissible against the person making the statements. Black's Law Dictionary defines admissions as "confessions, concessions or voluntary acknowledgments." Black's Law Dictionary 47 (6th ed.1990). Furthermore, under *Bruton*, it does not make sense to draw a distinction between confessions and admissions. The *Bruton* rule is designed to protect a codefendant's right to confront witnesses against him or her. *Bruton*, 391 U.S. at 137, 88 S.Ct. at 1628, 20 L.Ed.2d at 485. In particular, the rule prevents one defendant's confession which implicates the other defendant from being used against the non-confessing defendant unless the confessing defendant takes the stand. *Id.* at 136, 88 S.Ct. at 1628, 20 L.Ed.2d at 485. The right will still be violated regardless of the statement's technical definition.

■■■■ It is important to note a *Bruton* error does not require reversal if the error was harmless beyond a reasonable doubt. *United States v. Jones*, 965 F.2d 1507, 1515 (8th Cir.1992) (citing *United States v. Donahue*, 948 F.2d 438, 444 n. 5 (8th Cir.1991)). Erroneously admitting a confession may constitute harmless error if there is other over-

whelming evidence of the defendant's guilt, so the prejudicial impact of the codefendant's statement was relatively insignificant. *Brown v. United States*, 411 U.S. 223, 231, 93 S.Ct. 1565, 1570, 36 L.Ed.2d 208, 215 (1973). For instance, courts have held the *Bruton* rule does not apply in a situation where a codefendant's confession implicates a defendant who also has confessed. *Parker v. Randolph*, 442 U.S. 62, 72–73, 99 S.Ct. 2132, 2139, 60 L.Ed.2d 713, 723 (1979). However, the prejudicial impact of a codefendant's confession upon an incriminated defendant who has, insofar as the jury is concerned, maintained his innocence from the beginning is simply too great to be cured by a limiting instruction. *Id.* The district court's failure to exclude the written hearsay statements was prejudicial error.

**Limiting Instruction.** In order to protect Puffinbarger's rights, the written statements by Eakins should not have been admitted at trial. However, even if we found the statements were admissible against Eakins, we would still reverse because the district court failed to give a cautionary instruction informing the jury not to consider Eakins' statements in determining the guilt or innocence of Puffinbarger. Although some courts have held a limiting instruction will cure any potential prejudice in a *Bruton* situation, such is not the case here where the court failed to give a limiting instruction. Considering the statements were not admissible against Puffinbarger, at the very least, a limiting instruction was necessary to reduce the potential prejudice.

## III. Puffinbarger's Other Claims.

Puffinbarger raises several other points of error. As we have reversed and remanded the case for a new trial, we find it unnecessary to reach the remaining issues.

**REVERSED AND REMANDED FOR NEW TRIAL.**