STATE of Iowa, Appellee,

v.

Anthony Allen HOECK, Appellant.

No. 94–1035.

Court of Appeals of Iowa.

Feb. 28, 1996.

Linda Del Gallo, State Appellate Defender, and Patricia A. Reynolds, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Richard J. Bennett, Assistant Attorney General, William E. Davis, County Attorney, and Michael Walton and Realff Ottesen, Assistant County Attorneys, for appellee.

Heard by HAYDEN, P.J., and HABHAB and CADY, JJ.

HAYDEN, Presiding Judge.

Justin Voelkers, Jason Means, Anthony Hoeck, Shawn Shewmake, Christopher Felgenhauer, and Joe Hager were taken to the police station for questioning in connection with the death of Michelle Jensen, a seventeen-year-old high school student who was found shot to death on a country road in the early hours of August 29, 1993. Voelkers and Means made videotaped statements in which they admitted to their parts in Jensen's death. Both statements implicated Hoeck, the appellant in this case.

Hoeck, Voelkers, Means, Shewmake, Felgenhauer, and Hager were charged with robbery in the first-degree, kidnaping in the first-degree, criminal gang participation, and conspiracy. Hoeck, Voelkers, Means, Shewmake, and Felgenhauer were charged with first-degree murder. Hoeck, Voelkers, and Means were further charged with possession of an offensive weapon. Although Hoeck was originally charged with sex abuse in the first degree, the charge was later dropped. Shewmake, Felgenhauer, and Hager plead guilty to lesser charges and later testified for the State. The other three defendants, including Hoeck, went to trial.

Hoeck and his codefendants sought a change of venue due to the extensive media coverage of Jensen's death and gang activity. The district court denied the motion. The motion was renewed on the second day of voir dire because a local newspaper ran a story which included the defendants' criminal histories and several potential jurors were seen with a paper. The district court again denied motion for change of venue.

Voelkers and Means motioned to suppress their statements made to police officers. Both motions were denied. Hoeck motioned in limine to redact from these statements any reference to him. Although this motion was initially denied, the interviews were later redacted to exclude any mention of Hoeck's name from the video tapes and the transcript given the jury to read while viewing the videos. Hoeck, citing *Richardson v. Marsh*, 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987), then objected to the admission of the confessions alleging the codefendants' statements as redacted violated his right to confront and cross-examine the witnesses against him. Hoeck argued, although the tapes had been edited to omit any mention of his name, they were improperly redacted and inferentially incriminated him. The objection was overruled, and the tapes were admitted as redacted by the State. Neither Means nor Voelkers took the witness stand.

At trial, evidence indicated the defendants were members of the Conservative Vice Lords gang and had intended to rob a convenience store in order to get money to start a drug selling business. They wanted to use Jensen's vehicle for the purpose of robbing the store. Jensen and others were at a party at Hoeck's home. Jensen became intoxicated, but resisted when an attempt was made to take her car keys. Hoeck ordered Felgenhauer to strike Jensen with an electric fan and knock her unconscious. The ensuing assault did not leave Jensen unconscious. Hoeck then told Means to "get Bud" referring to a sawed-off shotgun Hoeck kept in his room. Hoeck later told Means and Voelkers to "take care of business." Means and

Voelkers drove Jensen to a country road where Voelkers shot her. The two men then fled the scene and returned to meet the others, including: Hoeck, Shewmake, Felgenhauer, and Hager. Means and Voelkers informed them of the shooting. The group, with the exception of Felgenhauer, then left in Jensen's car in order to rob the convenience store. The plans were abandoned, however, because the store was "too busy."

Hoeck was found guilty of second-degree murder and otherwise guilty as charged with the exception of the sexual abuse charges which were dropped. The district court imposed a life sentence on the kidnaping conviction and consecutive sentences on the other convictions. Hoeck now appeals. He argues the admission of the videotapes violated his right to confront and cross-examine witnesses; insufficient evidence existed to sustain his convictions; and, the district court abused its discretion in overruling his motion for change of venue. Lastly, he argues his trial counsel was ineffective in failing to motion for a severance of the trials. Although Hoeck's counsel initially filed a motion to sever, the motion was later withdrawn.

## I. Constitutional Right to Confront and Cross-Examine Witnesses.

■ Hoeck claims his Sixth Amendment right to confront and cross-examine witnesses against him was violated when the videotaped confessions of Means and Voelkers, which implicated Hoeck, were admitted at trial without either codefendant taking the witness stand. Hoeck argues the video tapes and transcripts were not properly redacted. Hoeck contends, although his name was eliminated from the video tapes and the transcripts, it was obvious Means and Voelkers were referring to Hoeck.

■ Our review of Hoeck's Sixth Amendment claim is de novo. *State v. Puffinbarger*, 540 N.W.2d 452, 455 (Iowa App.1995). When constitutional safeguards are involved, we are obliged to make our own evaluation of the totality of the circumstances. *Id.*

■ In this case, as in the typical *Bruton* scenario, the respective confessions of the two codefendants (Means and Voelkers) are admissible into evidence against each individually because the confessions are admissions by party opponents under 801(d)(2)(A). *Id.* at 457 (citing *Bruton v. United States*, 391 U.S. 123, 129 n. 3, 88 S.Ct. 1620, 1624 n. 3, 20 L.Ed.2d 476, 480 n. 3 (1968)). However, no exception to the hearsay rule allows the statements to be used against the other codefendant, Hoeck. *See id.* (citing *Bruton*, 391 U.S. at 129 n. 3, 88 S.Ct. at 1624 n. 3, 20 L.Ed.2d at 480 n. 3). Unfortunately, once the jury hears the codefendants' (Means and Voelkers) confessions, they may be inclined to use them against Hoeck. *See id.* To avoid such a result, the *Bruton* rule holds a nontestifying codefendant's confession incriminating the other defendant is barred by the confrontation clause from admission into evidence at their joint trial. *Id.* (citing *Bruton*, 391 U.S. at 137, 88 S.Ct. at 1628, 20 L.Ed.2d at 485). This is true even if the jury is instructed to consider the confession only against the confessing codefendant. *United States. v. Donahue*, 948 F.2d 438, 443 (8th Cir.1991) (citing *Richardson v. Marsh*, 481 U.S. 200, 201–02, 107 S.Ct. 1702, 1704–05, 95 L.Ed.2d 176, 182 (1987)). This narrow exception to the general rule that the jury is conclusively presumed to follow the court's instructions was created in *Bruton*. *Id.*

The Supreme Court has been reluctant to expand this exception. *Id.* It has held no constitutional violation occurs if, with a proper limiting instruction, the codefendant's confession is sufficiently redacted to eliminate not only the defendant's name, but any reference to his or her existence. *Richardson*, 481 U.S. at 211, 107 S.Ct. at 1709, 95 L.Ed.2d at 188; *see also United States. v. Comeaux*, 955 F.2d 586, 590 (8th Cir.1992) (The confrontation clause is not violated by the admission of a nontestifying codefendant's confession when the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence). It has also been held the *Bruton* rule is not violated merely because other evidence allows the jury to infer a link between a codefendant's redacted confession and the defendant. *United States v. Long*, 900 F.2d 1270, 1279 (8th Cir.1990). Provided the redacted confession itself contains no reference to the defendant, an instruction to the jury to avoid

inferring any link between the statement and the defendant should suffice to protect the defendant's Sixth Amendment rights. *Id.*

The Supreme Court has left open the issue of the admissibility of a confession in which the defendant's name was replaced with a symbol or neutral pronoun. *Richardson,* 481 U.S. at 211 n. 5, 107 S.Ct. at 1709 n. 5, 95 L.Ed.2d at 188 n. 5 ("We express no opinion on the admissibility of a confession in which the defendant's name has been replaced with a symbol or neutral pronoun"). As such, courts have distinguished cases where presentation of the redacted statement draws the jury's attention to the fact a name was omitted inviting the jury to fill in the blank, and cases where the redacted statement does not invite speculation. *Long,* 900 F.2d at 1280. The Eighth Circuit deals with this issue on a case-by-case basis. *Donahue,* 948 F.2d at 443–44 n. 4. In some instances, courts have held *Bruton* was violated because, although the name was redacted, the jurors could tell who was being implicated. *Long,* 900 F.2d at 1280 (reference to "someone" violative of *Bruton* because the reference "led the jury straight to" the defendant); *United States v. Payne,* 923 F.2d 595, 597 (8th Cir.1991) (reference to "someone" violative of *Bruton* where "everyone at the trial knew who the 'someone' was").

We determine, under the facts and circumstances of this case, the *Bruton* rule was violated. Hoeck's name was redacted from the confessions and replaced with a gap of silence. The two confessions also made several references to "everyone" and "he." This case is similar to *Long,* 900 F.2d at 1280, and *Payne,* 923 F.2d at 597, where the Eighth Circuit held *Bruton* was violated because the jury was invited to speculate as to the identity of the "someone" referred to in the redacted statements and the jury could easily determine the "someone" was the defendant. In this case, we also find the gaps left in the redacted statements, as well as the references to "everyone" and "he," invited the jury to speculate as to the identity of the person omitted and lead the jury to the conclusion the name omitted was Hoeck's. Although any specific mention of Hoeck's name was eliminated from the video tapes and the transcripts, the context of certain portions plainly indicated the name left out was Hoeck's, thus implicating him throughout the confessions.

For instance, during Means' confession in the case at bar, the following conversation took place between deputy Mike Brown and Means dealing with what happened after Means and Voelkers returned from the shooting. The blank spaces indicate where a name was redacted.

> Jason: ... everyone started running up and
>
> Mike: Approaching you guys?
>
> Jason: We get to the car ...
>
> Mike: Wait a minute. They run out to you and first you guys walk in the house, don't you?
>
> Jason: Yeah.
>
> Mike: And what is said and done?
>
> Jason: They said is it taken care of?
>
> Mike: Who said that?
>
> Jason: \_\_\_\_
>
> Mike: Who else?
>
> Jason: Chris asked me?
>
> Mike: What about Joe?
>
> Jason: No, Joe ...
>
> Mike: Chris asked you. Was Shawn there?
>
> Jason: Yeah. Shawn was there.
>
> Mike: Who else was there?
>
> Jason: Just Shawn.
>
> . . . .
>
> Mike: So now, you're walking in the house and they're saying has business been taken care of? Is that right?
>
> Jason: (Nods)
>
> Mike: \_\_\_\_ and Chris were asking and Shawn?
>
> Jason: Uh huh.

The jurors knew there were six persons charged in connection with this case. Five of those persons were accounted for in the above conversation: Means and Voelkers who were returning from the scene of the murder, Chris who asked about whether "it" was taken care of, Joe who did not ask, and Shawn who was also present. The gap drew the jury's attention to the fact a sixth name

was omitted and, consequently, led the jury to conclude the other person asking about whether "it" was taken care of was Hoeck. Later during the confession, Hoeck was further implicated as follows:

Mike: It was Shawn, Joe, ____, Jason, that all planned the robbery, is that right?

Jason: ____ planned it but he filled us in.

Mike: But everyone went along with it. Everybody was equally involved and everybody was going to partake in the money that was going to be made.

Jason: (Nods)

Mike: Was Chris involved, too?

Jason: He was going to be in the business and he was supposed to be in the burglary.

Mike: You mean the robbery?

Jason: But we told him to stay at his house.

Once again, the blank spaces invited the jury to insert Hoeck's name. As such, Hoeck was identified as the mastermind behind the robbery. Additionally, the references to "everyone" clearly implicated Hoeck in the crimes.

With respect to Voelkers' confession, the following conversation took place between Brown and Voelkers which also implicated Hoeck.

Mike: Okay, so there's Jason, I'm just gonna say the names, Jason, Chris, Justin (yourself), ____, Joe and Shawn in the car.

Justin: No, the car is . . . Shawn, me, Joe, ____, and Jason.

Mike: Chris wasn't there?

Justin: No, he was at the house.

Mike: Okay, Jason, Justin, ____, Joe and Shawn were in the car to go do the robbery at the Quick Shop where at?

Again, by mentioning all the persons involved in the crimes, with the exception of Hoeck, the confession clearly invites the jury to insert Hoeck's name in the blank. The confession led the jury straight to the conclusion the name left out was referring to Hoeck; thus, implicating him in the crimes. Furthermore, in the context of these statements, the references to "everyone" clearly includes Hoeck. For the above-stated reasons, we determine the *Bruton* rule was violated.

Although we find the *Bruton* rule was violated, violations of the *Bruton* rule are subject to the harmless error standard. *Long*, 900 F.2d at 1280. A *Bruton* error does not require reversal if the error was harmless beyond a reasonable doubt. *Puffinbarger*, 540 N.W.2d at 458 (citing *United States v. Jones*, 965 F.2d 1507, 1515 (8th Cir.1992)). Erroneously admitting a confession may constitute harmless error if there is other overwhelming evidence of the defendant's guilt rendering the prejudicial impact of the codefendant's statement relatively insignificant. *Id.* (citing *Brown v. United States*, 411 U.S. 223, 231, 93 S.Ct. 1565, 1570, 36 L.Ed.2d 208, 215 (1973)).

We find the *Bruton* violation committed with respect to the two redacted videotaped confessions was harmless. *See United States v. Miller*, 995 F.2d 865, 867 (8th Cir. 1993). Even without the videotaped confessions, ample evidence connects Hoeck with the crimes for which he was convicted. In part II of this opinion, we address the sufficiency of the evidence and examine the other evidence implicating Hoeck which exists independently of the taped confessions. As will be demonstrated, this other evidence overwhelming proves Hoeck's guilt. As such, we determine Hoeck would have been convicted even if the videotaped confessions had not been admitted and, therefore, he did not suffer prejudice from the *Bruton* error.

## II. Sufficiency of the Evidence.

Our scope of review is on assigned error only. Iowa R.App.P. 4. The standard of review in challenging the sufficiency of the evidence is well established. *State v. Lampman*, 342 N.W.2d 77, 81 (Iowa App.1983). We will uphold a verdict where there is substantial evidence in the record tending to support the charge. *State v. Aldape*, 307 N.W.2d 32, 39 (Iowa 1981). Substantial evidence means evidence which would convince a rational fact finder the defendant is guilty beyond a reasonable doubt. *State v. LeGear*, 346 N.W.2d 21, 23 (Iowa 1984); *State v. Hall*, 371 N.W.2d 187, 188 (Iowa App.1985).

When reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the State, including legitimate inferences and presumptions that fairly and reasonably may be deduced from the evidence in the record. *State v. Bass,* 349 N.W.2d 498, 500 (Iowa 1984); *Hall,* 371 N.W.2d at 188. Direct and circumstantial evidence are equally probative so long as the evidence raises "a fair inference of guilt and [does] more than create speculation, suspicion, or conjecture." *State v. Hamilton,* 309 N.W.2d 471, 479 (Iowa 1981). It is necessary to consider all the evidence in the record, and not just the evidence supporting the verdict, to determine whether there is substantial evidence to support the charge. *Bass,* 349 N.W.2d at 500; *Hall,* 371 N.W.2d at 188.

Hoeck makes several claims with respect to the sufficiency of evidence. Because the evidence contained in the confessions cannot be used to convict Hoeck, we must look only to the evidence existing independent of the videotaped confession in determining the sufficiency of the evidence. As we will explain below, we find the evidence independent of the confessions overwhelmingly proves Hoeck is guilty of the crimes with which he was convicted. Consequently, we find there is sufficient evidence to uphold his convictions and, as held in part I, Hoeck was not prejudiced by the *Bruton* error.

First, Hoeck claims the testimony of accomplices Hager, Shewmake, and Felgenhauer was insufficient evidence upon which to base a conviction because their testimony was not corroborated by independent evidence. The jury was instructed these three men were accomplices and, as such, their testimony must be corroborated. The jury was also instructed the testimony of one accomplice was not sufficient to corroborate the testimony of any other accomplices.

Rule 20(3) of the Iowa Rules of Criminal Procedure provides:

A conviction cannot be had upon the testimony of an accomplice or a solicited person, unless corroborated by other evidence which shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof.

The only requirement for corroborating testimony is it must support some material part of the accomplice's testimony, thereby tending to connect the defendant to the commission of the crime and to support the credibility of the accomplice. *State v. Brown,* 397 N.W.2d 689, 694–95 (Iowa 1986); *see also State v. Doss,* 355 N.W.2d 874, 879–80 (Iowa 1984). The State need not establish corroborative evidence beyond a reasonable doubt. *State v. King,* 256 N.W.2d 1, 10 (Iowa 1977). The evidence may be direct or circumstantial and need not be strong or confirm each material fact of the accomplice's testimony. *Brown,* 397 N.W.2d at 695. While corroborative evidence must tend to connect defendant to the crime and thus must be inculpatory, it need not be entirely inconsistent with innocence. *Id.*

We find the testimony of Shewmake, Felgenhauer, and Hager is corroborated in a number of respects by evidence unrelated to other accomplices. For instance, independent witnesses corroborated evidence Hoeck was a member of the Conservative Vice Lords and was the leader of the gang. Independent witnesses also corroborated Hoeck was the owner of a shotgun named "Bud" which Hoeck kept in his bedroom. In fact, Hoeck himself admitted to having the shotgun. Physical evidence established "Bud" leaves a similar pattern to the pattern of Jensen's wounds, and shotgun shells were found in Hoeck's room. This physical evidence corroborates accomplice testimony indicating Hoeck gave Means and Voelkers the murder weapon. An independent witness also established Hoeck was having a party at his home, Jensen dropped Means and Felgenhauer off there, and Jensen intended to return to the party. This corroborates testimony the accomplices were together at Hoeck's home where the crimes were planned. A security camera videotaped Felgenhauer and Hager in the Quick Shop, thereby corroborating their testimony they were staking out the store so Hoeck and others could commit the robbery. After examining the above and ample other evidence in the record, we find the testimony of ac-

complices Shewmake, Felgenhauer, and Hager was sufficiently corroborated by the testimony of nonaccomplice witnesses and by physical evidence.

Next, Hoeck claims insufficient evidence exists to support the kidnaping conviction. He contends no evidence indicates Jensen was removed without her consent or authority. Hoeck also argues, even if the record established one of the codefendants kidnaped Jensen, the record lacks sufficient evidence to show Hoeck aided or abetted this act and also lacks sufficient evidence to show the act of kidnaping could have reasonably been foreseen in furtherance of a conspiracy to rob the local Quick Shop. He further claims there is insufficient evidence to support the convictions for second-degree murder, involving malice aforethought, and first-degree robbery of Jensen's car. Lastly, he claims there is insufficient evidence to convict him of conspiracy to rob the Quick Shop because Felgenhauer was not a coconspirator, and no overt act took place. We reject all Hoeck's claims and find there is sufficient evidence to support his convictions.

 With respect to kidnaping, there is substantial evidence Jensen was removed or confined without her consent or authority. Evidence indicates Jensen wanted to be taken home prior to the shooting and, before leaving Hoeck's home, was told she would be taken home. Our courts have held such deception and removal constitutes kidnaping under similar circumstances. *State v. Ramsey,* 444 N.W.2d 493, 493–94 (Iowa 1989); *State v. Ristau,* 340 N.W.2d 273, 276 (Iowa 1983). There is also substantial evidence Hoeck aided or abetted the kidnaping and reasonably foresaw it would result in furtherance of a conspiracy to rob the local Quick Shop. For instance, evidence indicates Hoeck knew the men were going to kill Jensen rather than take her home, and encouraged and planned with the others to kidnap Jensen so she could be killed and her car could be stolen. Evidence also indicates Hoeck directed Voelkers and Means to kill Jensen by stating "take care of business" when he handed the murder weapon to them. Furthermore, the testimony of several witnesses links Hoeck to the murder weapon.

The above evidence is not only sufficient to support Hoeck's kidnaping charge, but is also sufficient to support his second-degree murder, first-degree robbery, and conspiracy charges.

With respect to the conspiracy charges, Hoeck claims the evidence is insufficient because Felgenhauer was not a coconspirator, and no overt act took place. First, Hoeck and his accomplices made several overt acts in furtherance of the conspiracy to rob the convenience store, including: staking out the store, driving to the store to commit the robbery, and committing murder in order to steal the car to be used in the robbery. Second, the evidence establishes Felgenhauer was a coconspirator even though he did not plead guilty to conspiracy. The only reason Felgenhauer did not plead guilty to conspiracy was because of the terms of his plea agreement. Nevertheless, even if Felgenhauer was not a coconspirator, we find it irrelevant because a conspiracy was proven to exist, at the very least, between Hoeck, Hagar, Shewmake, Voelkers, and Means.

In summary, we find there is substantial evidence in the record to convince a rational trier of fact Hoeck is guilty beyond a reasonable doubt of the crimes for which he was convicted. As such, we affirm his convictions.

### III. Change of Venue.

 Our scope of review for a district court's denial of a motion for a change of venue due to trial publicity requires us to examine the record de novo to determine whether the district court's decision demonstrates an abuse of discretion. *State v. Siemer,* 454 N.W.2d 857, 860 (Iowa 1990); *State v. Love,* 302 N.W.2d 115, 122 (Iowa 1981).

 Pretrial publicity warrants a change of venue when "such degree of prejudice exists in the county in which the trial is to be had that there is a substantial likelihood a fair and impartial trial cannot be preserved with a jury selected from that county." Iowa R.Crim.P. 10(10)(b). Prejudice can be shown by publicity attending the trial which is so pervasive and inflammatory that prejudice must be presumed or by actual prejudice on

the part of the jury. *State v. Simmons,* 454 N.W.2d 866, 867 (Iowa 1990).

■ A juror, however, need not be completely ignorant of the issues and events involved in a trial. *Murphy v. Florida,* 421 U.S. 794, 800, 95 S.Ct. 2031, 2036, 44 L.Ed.2d 589, 594–95 (1975); *State v. Gavin,* 360 N.W.2d 817, 819 (Iowa 1985). Mere exposure to news accounts does not amount to a substantial likelihood for prejudice. *State v. Walters,* 426 N.W.2d 136, 138 (Iowa 1988). Additionally, news reports containing information concerning prior convictions of defendants do not create presumptive prejudice. *Simmons,* 454 N.W.2d at 868. The relevant question is not what a juror has been exposed to, but whether the juror holds such a fixed opinion of the merits of the case that he or she cannot judge impartially the guilt or innocence of the defendant. *Walters,* 426 N.W.2d at 138.

■ In order to determine whether news articles and broadcasts have prejudiced a community for venue purposes, we consider whether the accounts: indicated the defendant is guilty; were factual and informative in tone; were inflammatory in tone; contained editorial denunciations of the defendant or emotional stories regarding the defendant or victim; or, were inaccurate, misleading or unfair. *Walters,* 426 N.W.2d at 139.

■ We also look to see whether enough time had passed between the accounts and the trial date to dissipate any prejudicial effect of adverse publicity; whether panel members who professed knowledge of the case stated they could render an impartial verdict on the basis of the evidence presented at trial; and, whether the trial judge sustained strikes for cause against jurors who stated they could not render an impartial verdict due to their prior knowledge. *Walters,* 426 N.W.2d at 139; *see also Siemer,* 454 N.W.2d at 860 ("nature, tone, and accuracy of the articles; their timing in relation to the trial; and the impact of the publicity on the jurors as revealed through voir dire" considered in determining if publicity is presumptively prejudicial).

■ Hoeck attempts to prove there was actual prejudice on the part of the jury and the publicity attending the trial was so pervasive and inflammatory prejudice must be presumed. Several exhibits were admitted at trial to support Hoeck's claim the publicity was so pervasive and inflammatory prejudice must be presumed, including:

1. Seven scripts and videos correlating to the scripts from WHBF television news stories. The stories included references to the sexual abuse charges, showed scenes of the Jensen's funeral, and showed blood stains on the road where she was found.

2. Twelve scripts, with correlating videotape, from KWQC television which made reference to sexual abuse, showed various photographs of Jensen alive, and showed views of the blood stains on the road.

3. Radio shows regarding youth and gang-related violence.

4. Twenty-nine newspaper articles from the Quad–City Times relating to or referring to the case.

5. Nationally broadcasted television news show "Front Page" which focused on gang activity in the Midwest. The broadcast included a fifteen minute segment on the case, and it included allegations of rape and statements the defendants showed no remorse.

6. Newspaper articles concerning gang activity.

After close examination of the above exhibits and all the evidence presented at trial, we reject both of Hoeck's arguments.

As documented in Hoeck's exhibits, there was extensive news coverage of the case. However, as in the *Walters* case, we find "the record does not disclose ... sensational reporting of a routine crime. Rather, there was routine reporting of a sensational crime. We find nothing in the news coverage which went beyond direct relating of unvarnished facts." *Walters,* 426 N.W.2d at 139–40. There is also no evidence the media's account of the crime was unfair or inaccurate. *See id.* at 140. The coverage was factual, informative, accurate and not inflammatory or misleading. Media sources did cover the funeral of Jensen and evoked some emotional appeal; however, the coverage was not so

inflammatory as to presume prejudice. We also do not believe the mere mention of the sexual abuse allegations which were later dropped was of such magnitude as to create a presumption of prejudice. The statements concerning the sexual abuse allegations were both fair and factual. As such, we determine the publicity attending the trial was not pervasive and inflammatory as to presume prejudice.

With respect to Hoeck's argument concerning prejudice on the part of the jury, we find, while the judge may have failed to grant strikes for cause early in the voir dire when it may have been appropriate, the jurors remaining at the end of voir dire were all impartial.

There were only three jurors who presented potential problems. One juror's eighteen-year old went to school with Jensen and knew the three defendants. There is, however, no indication the juror's child had any significant association with these four persons. Furthermore, this juror unequivocally stated she had not discussed the case with her family, and any contact between her child and those involved in this case would have no effect on her ability to be impartial. She further stated if all the other jurors held a position different from hers, she would be willing to hold her own position. The same juror also knew a police officer. She, however, was not familiar with any of the officers involved in this case and indicated she would treat the officers like any other witnesses.

A second juror stated she knew one of the officers who was going to testify because the officer was an acquaintance of her husband. She, however, did not know the officer very well and would merely say "hi" in passing. She stated her familiarity with the officer would not hinder her ability to weigh the credibility of the witnesses or the evidence. She also stated she could be fair and impartial during the trial.

A third juror also knew police officers who were going to testify. She was familiar with them, however, only because she worked in a grocery store. She stated, they were "basically acquaintances, just shopping" and her acquaintance would have no effect on her ability to treat the officers just like any other witness. We note trial counsel passed for cause with respect to both the second and third jurors discussed above.

As for the remaining jurors who served at this trial, the record shows they too were impartial. All the jurors indicated they could lay aside any prejudgments they may have made and could decide the case solely on the evidence. None of the jurors or alternate jurors who served in this case were prejudiced against Hoeck. It was not necessary for the jurors to be completely ignorant of the case, *see Gavin*, 360 N.W.2d at 819, and any exposure to news accounts did not amount to a substantial likelihood for prejudice. *See Walters*, 426 N.W.2d at 138. The relevant question is whether each juror held a fixed opinion of the merits of the case so he or she could not judge impartially the guilt or innocence of the defendant. *Id.* None of the jurors selected in this case possessed such a fixed opinion.

For the above-stated reasons, we find the district court did not abuse its discretion in refusing to change venue. Review of the exhibits and evidence demonstrate the district court did not exercise its discretion " 'on grounds or for reasons clearly untenable or to an extent clearly unreasonable.' " *State v. Teeters*, 487 N.W.2d 346, 349 (Iowa 1992) (quoting *State v. Morrison*, 323 N.W.2d 254 (Iowa 1982)). As such, we affirm.

## IV. Ineffective Assistance of Counsel.

Ordinarily, our review of postconviction relief proceedings is for errors of law. *Hinkle v. State*, 290 N.W.2d 28, 30 (Iowa 1980). However, when a postconviction petitioner asserts violation of constitutional safeguards—such as ineffective assistance of counsel—we make our own evaluation based on the totality of the circumstances. This is the equivalent of de novo review. *Id.* Our ultimate concern is with the " 'fundamental fairness of the proceeding whose result is being challenged.' " *State v. Risdal*, 404 N.W.2d 130, 131 (Iowa 1987) (quoting *Strickland v. Washington*, 466 U.S. 668, 696, 104 S.Ct. 2052, 2069, 80 L.Ed.2d 674, 699 (1984)).

In order to prevail on such a claim, appellant must show by a preponder-

ance of the evidence (1) counsel failed to perform an essential duty and (2) prejudice resulted. *See Risdal,* 404 N.W.2d at 131; *Edman v. State,* 444 N.W.2d 99, 101 (Iowa App.1989).

The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674, 698 (1984). In evaluating counsel's performance, we presume counsel acted competently. *See Risdal,* 404 N.W.2d at 131.

■■■ In proving the first prong of this test, appellant must overcome the strong presumption counsel's actions were reasonable under the circumstances and fell within the normal range of professional competency. *State v. Hildebrant,* 405 N.W.2d 839, 841 (Iowa 1987). To prove the second prong of this test appellant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698.

■■■ Where the record on direct appeal is not adequate to permit us to resolve the issue, we preserve the defendant's claim for postconviction proceedings so the facts may be so developed. *State v. Koenighain,* 356 N.W.2d 237, 238 (Iowa App.1984). This also gives the allegedly-ineffective attorney the opportunity to explain his or her conduct. *State v. Coil,* 264 N.W.2d 293, 296 (Iowa 1978). However, the Iowa supreme court has stated it is not necessary to determine whether counsel's performance was deficient before examining the prejudice component of an ineffective assistance claim. *Taylor v. State,* 352 N.W.2d 683, 685 (Iowa 1984). The court quoted *Strickland v. Washington:*

The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient

prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Taylor,* 352 N.W.2d at 685 (quoting *Strickland,* 466 U.S. at 697, 104 S.Ct. at 2069, 80 L.Ed.2d at 699–700). Pursuant to *Taylor v. State,* we may affirm applicant's conviction because he has failed to prove prejudice without deciding whether there was a failure of duty. *See Taylor,* 352 N.W.2d at 685.

■■■ Hoeck requests this court to preserve his ineffective assistance of counsel claim for a possible future postconviction relief application. Hoeck claims his trial counsel was ineffective for failing to motion the court for severance of his trial from the other codefendants, Means and Voelkers. Although the motion to sever was filed, trial counsel later withdrew the motion. Hoeck argues, had he been tried alone, the videotaped confessions of the codefendants would not have been admitted into evidence. According to Hoeck, if the codefendants' confessions had not been admitted at the joint trial, the outcome of the trial would likely have been different.

Upon a review of the record in this case, we determine Hoeck has failed to satisfy the prejudice component of his ineffectiveness claim. Severing the trials would have prevented the codefendants' confessions from being admitted in Hoeck's trial. However, as demonstrated in parts I and II of this opinion, the confessions did not effect the ultimate verdict. There is overwhelming evidence of Hoeck's guilt even in the absence of the videotaped confessions. The outcome of the case would have been the same even if the trials were severed and the confessions not admitted in Hoeck's trial. As such, Hoeck has failed to satisfy the prejudice component of his ineffectiveness claim and, therefore, we dismiss the claim.

**AFFIRMED.**