STATE of Iowa, Appellee,

v.

Ernest Frederick WALTERS, Appellant.

No. 85–1538.

Supreme Court of Iowa.

June 15, 1988.

Charles L. Harrington, Appellate Defender, and B. John Burns, Asst. Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., Richard J. Bennett, Asst. Atty. Gen., and Kjas T. Long, County Atty., for appellee.

Considered by HARRIS, P.J., and SCHULTZ, NEUMAN, SNELL and ANDREASEN, JJ.

HARRIS, Presiding Justice.

There are three assignments of error in this appeal following defendant's convictions of first-degree murder, first-degree robbery, first-degree burglary, and two counts of second-degree kidnapping. Because we find no merit in any of the assignments we affirm.

Defendant Ernest Walters and Cheryl Beck lived with each other for several years. A son, Elijah, was born to them. In April 1985 Cheryl left Walters and

moved back in with her parents, taking Elijah with her.

In June 1985 Walters abducted Ruth Corcoran. After forcing Corcoran to drive to St. Louis and then to Chicago, Walters and Corcoran drove to the home of Cheryl Beck's parents, in Jackson County. Carrying a handgun, Walters forced his way into the Beck house. Walters shot and killed Cheryl's father, Robert Beck, and shot and wounded Cheryl's mother and sister. Walters then fled, taking Corcoran, Cheryl and Elijah with him. At one point Walters sexually abused Cheryl. After two days Walters was apprehended in Missouri.

Walters was found guilty of all five crimes with which he was charged. He has appealed from the convictions.

We review all of the trial court's rulings with which we are confronted for an abuse of discretion. *See State v. Coker,* 412 N.W.2d 589, 592–93 (Iowa 1987); *State v. Ware,* 338 N.W.2d 707, 713 (Iowa 1983); *State v. Nowlin,* 244 N.W.2d 596, 600 (Iowa 1976).

I. Walters' first assignment relates to a change of venue. The crimes received extensive media coverage around the state, especially in the Cedar Rapids area, where Walters resided. Robert Beck's prominence in Jackson County was another reason the media was so interested in the case.

Walters moved for a change of venue, arguing that the pretrial publicity prevented him from being tried by a fair and impartial jury in Jackson County. The district court changed venue to Muscatine County, stating that Robert Beck's prominence in Jackson County would make it impossible to get a fair and impartial trial there. The court denied Walters' request that venue be changed to a location further from Cedar Rapids.

Iowa rule of criminal procedure 10(10)(b) states:

If the court is satisfied from a motion for change of venue and the evidence introduced in support of the motion that such degree of prejudice exists in the county in which the trial is to be had that there is a substantial likelihood a fair and impartial trial cannot be preserved with a jury selected from that county, the court either shall order that the action be transferred to another county in which the offensive condition does not exist, ... or shall order that the trial jury be impaneled in and transferred from a county in which the offensive condition does not exist....

This right to a change of venue upon proof of inability to obtain a fair trial in the county where the indictment is found is within the guarantee of the sixth and fourteenth amendments of the United States Constitution and article I, sections 9 and 10, of the Iowa Constitution. *Harnack v. District Court,* 179 N.W.2d 356, 360 (Iowa 1970).

A defendant who urges jury prejudice as grounds for overturning a criminal conviction must show actual prejudice on the part of the jury, unless, under the circumstances, the publicity attending the trial was so pervasive and inflammatory that prejudice must be presumed. *State v. Spargo,* 364 N.W.2d 203, 207 (Iowa 1985). A defendant on motion for change of venue does not have a right to select a particular county for his trial. *Harnack,* 179 N.W.2d at 360. A change must be ordered when the defendant demonstrates a substantial likelihood that a fair and impartial jury could not otherwise be selected. *State v. Ware,* 338 N.W.2d 707, 713 (Iowa 1983).

Mere exposure to news accounts does not amount to a substantial likelihood of prejudice. *Ware,* 338 N.W.2d at 713; *State v. Chadwick,* 328 N.W.2d 913, 916 (Iowa 1983). Voir dire of prospective jurors should be trusted to expose any substantial prejudices among them. *Ware,* 338 N.W.2d at 713; *Chadwick,* 328 N.W.2d at 916. Impartiality does not demand complete juror ignorance of issues and events. *State v. Gavin,* 360 N.W.2d 817, 819 (Iowa 1985). For the purpose of determining juror prejudice, the relevant question is not what a juror has been exposed to, but whether the juror holds such a fixed opinion of the merits of the case that he or she cannot judge impartially the guilt or innocence of the defendant. *Id.* The United

States Supreme Court stated in *Irvin v. Dowd,* 366 U.S. 717, 723, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751, 756 (1961):

> To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.

■ Among the factors to be considered in determining the county to which the case should be transferred, apart from the obvious one that prejudice should be absent there, are whether a particular place is convenient for the witnesses and for the attorneys, whether it is a place where a speedy trial may be obtained, and whether it is a place which is easily accessible by available means of transportation. Of course the existence of prejudice in a particular county militates against the selection of that place for trial. Wharton's Criminal Procedure § 43, at 129–30 (1974); *see also* Annotation, *Pretrial Publicity in Criminal Case as Ground for Change of Venue,* 33 A.L.R.3d 17 (1970).

We have established certain criteria to be used in determining whether newspaper articles and television and radio broadcasts have prejudiced a community for venue purposes. Among the considerations is whether the articles or broadcasts indicate the defendant is guilty of the charges against him. *Spargo,* 364 N.W.2d at 207. Also considered are whether the media accounts are factual and informative in tone and whether enough time has passed between publication of the material and the trial date so as to dissipate any prejudicial effect that may have been initially created by adverse publicity. *Id.* at 208. Another factor is whether pretrial publicity was inflammatory in tone. *State v. Cuevas,* 288 N.W.2d 525, 527–28 (Iowa 1980). Also important are whether there were any editorial denunciations of the defendant or emotional stories regarding the defendant or the victim and whether the pretrial coverage was inaccurate, misleading or unfair. *State v. Johnson,* 318 N.W.2d 417, 422 (Iowa 1982), *cert. denied,* 459 U.S. 848, 103 S.Ct. 106, 74 L.Ed.2d 95 (1983). The court is also to consider whether panel members who profess any knowledge of the case state that they nevertheless could render an impartial verdict on the basis of the evidence presented at trial and without reference to prior knowledge. *Gavin,* 360 N.W.2d at 818–19. Finally, it is of some significance if the trial court sustains motions for cause against jurors who had prior knowledge of the case and who state that they would not be able to render an impartial verdict. *State v. Hickman,* 337 N.W.2d 512, 515 (Iowa 1983).

■ Walters does not attempt to show actual prejudice on the part of the jury. Rather he contends that the publicity attending his case was so pervasive and inflammatory that prejudice must be presumed to exist, even in Muscatine County. He contends Muscatine is still within the viewing range of Cedar Rapids television stations and prejudice there was nearly as high as it was in Jackson County. He argues it was thus substantially likely that he could not receive a fair and impartial trial in Muscatine County and therefore the trial court abused its discretion in changing venue to Muscatine County rather than somewhere else outside of the Cedar Rapids viewing area.

There are a number of holes in defendant's venue argument. A portion of defendant's objection to the venue change stems from his assertion that television coverage from Cedar Rapids permeates news in Muscatine County. The record does not establish his claim; the greater number of prospective jurors who related learning of the case cited a Des Moines newspaper or Davenport television stations as the source of their information.

There was extensive news coverage of the case and it was well documented in the proceedings and exhibits. But the record does not disclose, as defendant would have it, sensational reporting of a routine crime. Rather, there was routine reporting of a sensational crime. We find nothing in the

news coverage which went beyond direct relating of unvarnished facts.

There is no evidence that the newspaper articles or television and radio broadcasts were unfair or inaccurate. There were no editorial denunciations of the defendant, nor did any articles or broadcasts state that the defendant was guilty of the crimes with which he was charged. Most of the stories ran shortly after the crime occurred and the defendant was arrested; coverage then dropped off.

We reject defendant's request that we adopt the reasoning of *People v. Botham*, 629 P.2d 589 (Colo.1981) (Rights to due process in a fair trial were denied "based [alone] upon a nexus between extensive pretrial publicity and the jury trial.").

The trial court did not abuse its discretion in changing venue from Jackson to Muscatine County.

■■■ II. In another assignment defendant asserts the trial court abused its discretion in refusing to appoint, at public expense, an expert to aid him in jury selection. Walters contends his right to the appointment stems from Iowa rule of criminal procedure 19(4) (expert or other necessary witnesses may be secured at public expense) and as a matter of equal protection guaranteed by the sixth and fourteenth amendments to the United States Constitution.

Walters cites a number of justifications for his request. Both he and his attorney were not acquainted with Muscatine County. He had only one attorney and was charged with five offenses. He also cited the pretrial publicity. The trial court found no indication the use of such an expert would contribute to a more fair jury and refused the request as unnecessary.

■■■ Rule 19(4) is intended to protect an indigent defendant's right to due process of law. *State v. Coker*, 412 N.W.2d 589, 591–92 (Iowa 1987). An indigent's right to effective assistance of counsel includes the right to public payment for reasonably necessary investigative services. *English v. Missildine*, 311 N.W.2d 292, 293–94 (Iowa 1981). We have said, how-

ever, that "[w]e are unwilling to say an impecunious defendant is entitled to anything which a wealthy one could purchase." *State v. Campbell*, 215 N.W.2d 227, 229 (Iowa 1974). We went on to say that "[t]he mere fact that one might be profligate in spending his own money furnishes no justification for an indigent to unnecessarily expend public funds." *Id.*

Rule 19(4) mirrors in purpose and relevant language 18 U.S.C. section 3006A(e)(1) (1982). *Coker*, 412 N.W.2d at 591. In view of that similarity, federal authority is persuasive in interpreting rule 19(4). *Id.* at 592. *United States v. Harris*, 542 F.2d 1283 (7th Cir.1976), involved a claim similar to the present one. The defendant in *Harris* requested a clinical psychologist to assist in jury selection. The court disposed of the claim by stating that "[w]hile this court is aware of the use of psychologists in a few cases for the purpose of jury selection, this is hardly necessary for an adequate defense...." *Id.* at 1315.

Walters did not carry his burden of showing that the use of a psychologist was reasonably necessary in the development of his defense. Simply because his counsel was unfamiliar with Muscatine County does not mean the aid of a psychologist in jury selection is reasonably necessary to the development of his defense. Nor does the fact that the case was the subject of pretrial publicity require that a psychologist be appointed to help select a jury. The trial court did not abuse its discretion in denying Walters' application.

Neither was Walters denied equal protection by the ruling. The record does not suggest the State employed such an expert.

The assignment is without merit.

■■■ III. Walters also challenges a trial court ruling which admitted testimony by Cheryl Beck in which she related that Walters sexually abused her after the kidnapping. We agree with the trial court that this evidence was admissible to show the complete story of the crime. We have said that events and circumstances which immediately surround an offense may be shown even though they may incidentally

show commission of another crime. *State v. Garren*, 220 N.W.2d 898, 900 (Iowa 1974). Such evidence is admissible when it is an inseparable part of the whole deed. *State v. Nowlin*, 244 N.W.2d 596, 601 (Iowa 1976). In *State v. Fryer*, 243 N.W. 2d 1 (Iowa 1976), the defendant, charged with murder, objected to the introduction of evidence that he raped one of the victims. We said:

> [W]e think excising evidence of the intercourse from the rest of the occurrences of the night would artificially bifurcate the whole incident. The case comes within the rule the state may show a continuous series of occurrences "to complete the story of the crime" although other offenses come to light in the process.

*Id.* at 6. *See also State v. Drake*, 219 N.W.2d 492, 494 (Iowa 1974) (rape of companion of victim admissible because closely related in point of time and place and so intimately associated with the crime charged as to form a continuous transaction).

IV. In a separate pro se brief Walters raises several other arguments.

■ He advances a former jeopardy argument based on his belief that burglary is a lesser-included offense of the felony murder charge. But we have held that the felony underlying a felony murder charge is not a lesser-included offense of felony murder. *See State v. Aswegan*, 331 N.W. 2d 93, 98 (Iowa 1983). The rationale for such a rule is that it is not essential to prove commission of the underlying felony in order to convict a defendant of felony murder. All that is required is proof that the defendant was participating in the underlying felony. *Id.*

Because it is not necessary to prove commission of first-degree burglary to convict Walters of felony murder predicated upon that burglary, the former is not a lesser-included offense of the latter. It therefore did not violate former jeopardy to charge Walters with both first-degree burglary and felony murder.

■ Walters also contends the trial court erred in denying his motion to sever the charge dealing with the kidnapping of Ruth Corcoran. We however think a joint trial was proper under Iowa rule of criminal procedure 6(1). The crimes were so intertwined as to form one transaction. *See State v. Bair*, 362 N.W.2d 509, 511 (Iowa 1985).

The trial court granted Walters' motion for individual voir dire of prospective jurors on the issue of pretrial publicity, but did not agree to individualized voir dire on other issues. Walters argued that complete individual voir dire was necessary "to screen out those who may be potentially biased and partial because of the prejudicial and inflammatory publicity attending the present case."

We rejected a similar, even stronger, claim in *State v. Webb*, 309 N.W.2d 404, 414 (Iowa 1981). We reject it again here.

The trial court ordered the individual voir dire examinations reported. The defendant contends the court erred in not having all of the voir dire reported and in not having the closing arguments reported.

Walters did not however preserve error on this assignment. His request for reporting the jury selection process was, as we have seen, accepted in large part. There was no suggestion at trial that the trial court's response to his request was in any way unacceptable. He made no trial request to report final arguments. Under Iowa rule of criminal procedure 18(4) he cannot now complain.

We find no merit in any of the assignments of error.

AFFIRMED.