**IN THE COURT OF APPEALS OF IOWA**

No. 13-0358
Filed October 15, 2014

**DANIEL ALAN BLAIR,**
  Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
  Respondent-Appellee.
_____

Appeal from the Iowa District Court for Boone County, Steven J. Oeth, Judge.

Petitioner appeals the denial of his application for postconviction relief.
**AFFIRMED.**

Andrew J. Boettger of Hastings, Gartin & Boettger, L.L.P., Ames, for appellant.

Thomas J. Miller, Attorney General, Mary A. Triick, Assistant Attorney General, Dan Kolacia, County Attorney, and Daniel J. Gonnerman, Assistant County Attorney, for appellee.

Heard by Vaitheswaran, P.J., and Doyle and McDonald, JJ. Danilson, C.J., takes no part.

**MCDONALD, J.**

Daniel Blair appeals the district court's denial of his application for postconviction relief. On appeal, Blair argues his trial counsel rendered constitutionally deficient performance by failing to file a motion for change of venue and by failing to adequately advise Blair of his right to testify.

I.

In 2008, Blair was convicted of murder in the first degree following a jury trial in Boone County. The facts and circumstances of the murder are set forth in *State v. Blair*, No. 08-0792, 2009 WL 1913691 (Iowa Ct. App. July 2, 2009), which resolved Blair's direct appeal following his conviction. In sum, the evidence showed that Blair, his paramour, and his roommate murdered Blair's paramour's husband, Shane Hill.

II.

We review ineffective assistance of counsel claims de novo. *See State v. Bearse*, 748 N.W.2d 211, 214 (Iowa 2008). An applicant for postconviction relief claiming ineffective assistance of trial counsel must establish that trial counsel failed to perform an essential duty and that this failure resulted in prejudice. *See State v. Westeen*, 591 N.W.2d 203, 207 (Iowa 1999). It is the applicant's burden to establish an entitlement to relief by a preponderance of the evidence. *See Ledezma v. State*, 626 N.W.2d 134, 145 (Iowa 2001).

To establish that counsel failed to perform an essential duty "the applicant must demonstrate the attorney performed below the standard demanded of a reasonably competent attorney." *Id.* at 142. The attorney's performance is

measured against "prevailing professional norms," and it is presumed the attorney performed competently. *See id.*

To establish prejudice, Blair must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Collins v. State*, 588 N.W.2d 399, 402 (Iowa 1998) (citation and quotation marks omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome of the defendant's trial." *Id.* (citation and quotation marks omitted). Our ultimate concern is with the fundamental fairness of the proceeding being challenged. *Id.*

### A.

We first address Blair's claim regarding change of venue. Blair contends his trial counsel was ineffective in failing to move for a change of venue due to extensive pretrial publicity. A trial court must grant a motion for change of venue if it determines "such degree of prejudice exists in the county in which the trial is to be held that there is a substantial likelihood a fair and impartial trial cannot be preserved with a jury selected from that county . . . ." Iowa R. Crim. P. 2.11(10)(b); *see State v. Walters*, 426 N.W.2d 136, 138 (Iowa 1988) ("A change must be ordered when the defendant demonstrates a substantial likelihood that a fair and impartial jury could not otherwise be selected."). To establish a substantial likelihood that a fair and impartial trial cannot be selected, a defendant must establish either (1) "the publicity attending the case was so pervasive and inflammatory that prejudice must be presumed," or (2) "actual

prejudice occurred" on the part of the jury. *State v. Simmons*, 454 N.W.2d 866, 867 (Iowa 1990).

"Mere exposure to news accounts does not amount to a substantial likelihood of prejudice." *Walters*, 426 N.W.2d at 138. "For the purpose of determining juror prejudice, the relevant question is not what a juror has been exposed to, but whether the juror holds such a fixed opinion of the merits of the case that he or she cannot judge impartially the guilt or innocence of the defendant." *Id.* Relevant factors include: (1) whether the media accounts stated the defendant is guilty; (2) whether the media accounts were factual in tone; (3) the passage of time between the media accounts and the trial date that might have diminished any prejudicial effect; (4) whether there were "editorial denunciations" of the defendant; (5) whether the media accounts were "inaccurate, misleading, or unfair;" (6) whether panel members who professed knowledge about the case stated they could remain impartial; and (7) whether those members who could not remain impartial were struck for cause. *See id.* at 139.

Blair has not established presumed prejudice that would have supported a meritorious motion to change venue and thus given rise to a duty to move for the same. *See State v. Dudley*, 766 N.W.2d 606, 620 (Iowa 2009) (stating "counsel has no duty to raise an issue that has no merit"). In support of his claim that prejudice should be presumed, Blair argues his trial counsel could not recall the nature and extent of pretrial publicity relating to the trial when she was deposed for this postconviction proceeding. Blair misapprehends the burden. It is his

burden to prove his claim. He has not done so. The postconviction record is devoid of evidence relating to the extent of any pretrial publicity, the timing of any such publicity, and the nature of any such publicity.

Blair also has not established actual prejudice that would have supported a meritorious motion and thus given rise to a duty to move for change of venue. *See id.* "Voir dire of prospective jurors should be trusted to expose any substantial prejudices among them." *Walters*, 426 N.W.2d at 138*.* Here, voir dire was extensive. Twenty-five members of the panel expressed some familiarity with the case, but only seven of them were selected for the jury. Of the seven, only three had anything more than a vague recollection of the case from pretrial accounts. All jurors stated they could set aside what they had heard about the case and decide the case only upon the evidence presented during trial. Blair does not identify any juror that was not fair or impartial. Blair has thus not established actual prejudice. *See Irvin v. Dowd,* 366 U.S. 717, 723 (1961) ("To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.").

Blair's claim fails for an additional reason: Blair's trial counsel and co-counsel made a strategic decision to try the case in Boone County. "The question of when to seek a change of venue is . . . a matter of professional judgment about which experienced trial lawyers frequently disagree." *Fryer v.*

*State*, 325 N.W.2d 400, 413 (Iowa 1982). The postconviction record shows trial counsel and co-counsel discussed the benefits of keeping the trial in Boone County in the hope jurors would know that Blair and the victim fought over the woman and that the victim had previously made threats against Blair. In sum, trial counsel and co-counsel believed the jurors' potential knowledge of the love-triangle might benefit their client. Their strategic decision to try the case in Boone County did not constitute a breach of an essential duty. *See id.* (holding counsel was not ineffective in exercising strategic decision to not file a motion for change of venue); *Sims v. State*, 295 N.W.2d 420, 423 (Iowa 1980) ("Improvident trial strategy, miscalculated tactics, or mistakes in judgment do not necessarily amount to ineffective assistance.").

Finally, Blair cannot establish prejudice under *Strickland v. Washington*, 466 U.S. 668 (1984), resulting from the claimed error. There was overwhelming evidence of Blair's guilt, including his confession. There is no showing in the postconviction record that a jury in a different county would have reached a different result. *See State v. Hanegan*, No. 00-2049, 2002 WL 663636, at *3 (Iowa Ct. App. Apr. 24, 2002) (holding claim of ineffective assistance of counsel failed despite alleged pretrial publicity where there was overwhelming evidence supporting the verdict and no indication the verdict would have been different in another county); *see also Strickland*, 466 U.S. at 695 (stating that the "assessment of prejudice should proceed on the assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision"). Indeed, in Blair's appeal brief, other than a

cursory assertion that prejudice existed, Blair does not even identify the prejudice allegedly suffered. Conclusory claims of prejudice are not enough to satisfy the requirement that the defendant (applicant) must prove prejudice. *See State v. Tate*, 710 N.W.2d 237 (Iowa 2006).

B.

We also conclude the district court correctly denied Blair's claim that his trial counsel provided constitutionally deficient advice related to Blair's right to testify. "The decision whether or not to testify belongs to the defendant, and the role of counsel is to provide advice to enable a defendant to make the decision." *Ledezma*, 626 N.W.2d at 146. "Counsel has a duty to advise the defendant about the consequences of testifying so that an informed decision can be made." *Id.* at 146-47.

There is no evidence that Blair's trial counsel or co-counsel breached any duty. Blair's claim rests on his trial counsel's postconviction testimony that she could not recall with specificity her discussions with Blair regarding his right to testify. This is not surprising given the length of time between Blair's trial and this postconviction relief proceeding. Counsel was able to testify, however, to her regular practice of advising clients regarding their right to testify. Her recollection that she and co-counsel would have had such discussions with Blair and the fact that she and co-counsel did have such discussions with Blair is confirmed by the colloquy made during trial:

> COUNSEL: Well, then, Danny the next question is whether or not you choose to testify. You know that in this country, you don't have to testify?
> BLAIR: Yes, sir.

COUNSEL: And that is a Constitutional right, which is of the highest order. Do you understand that?

BLAIR: Yes, sir.

COUNSEL: That means that you can sit here and, as Ms. Boehlje has indicated during voir dire, you can sit here throughout the trial and never say a word in your own defense. Do you understand?

BLAIR: Yes, sir.

COUNSEL: That's because the government has the burden of proof. They have to prove you guilty. We don't have to prove a thing; correct?

BLAIR: Correct.

COUNSEL: Moreover, they have to prove it beyond a reasonable doubt, which is a very substantial burden. Do you understand that?

BLAIR: Yes, sir.

COUNSEL: Danny, if you choose to testify, then you – that is absolutely your right and Ms. Boehlje and I will do our very best that we can in order to have your testimony be as helpful to you as it can be. The other option is to not testify. Do you understand?

BLAIR: Yes, sir.

. . . .

COUNSEL: Do you have any questions, Danny, as to what we have said here so far?

BLAIR: No, sir, I don't

COUNSEL: Would you like a couple of minutes to compose your thoughts and make a decision, an informed decision, after consultation with Ms. Boehlje and me as to your decision to testify or not?

BLAIR: I would appreciate that, yes.

COUNSEL: Okay. Five minutes enough?

BLAIR: Yeah.

COUNSEL: May we be indulged, Judge?

THE COURT: Certainly. I don't want this record to suggest that he's only being given five minutes. I assume there's been some time that you, folks, have talked to him prior to this. We're certainly giving him the extra time he needs. But just so your record is clear, counsel, you've had a chance to talk to him even well before this trial?

COUNSEL: Yes, sir, multiple times and numerous times during the course of this trial. We don't wish to delay the proceedings, but we understand the Court will give Mr. Blair as much time as he needs.

THE COURT: That's correct, Mr. Blair, we will. Is counsel's statement correct, Mr. Blair?

BLAIR: Yes, sir.

THE COURT: All right.

. . . .

COUNSEL: Danny, the judge gave us time to discuss this one last time; is that correct?
BLAIR: Yes, sir.
COUNSEL: And not only that, but we've discussed it for an extended period of time this morning; is that right?
BLAIR: Yes, sir.
COUNSEL: And we've discussed it multiple times during the course of the trial last week also; is that right?
BLAIR: Yes, sir.
COUNSEL: Have you had enough time to make up your mind as to whether or not you wish to testify?
BLAIR: I believe I have.
COUNSEL: Do you have any questions of either Ms. Boehlje or me or, indeed even the Court, if the Judge wanted to grant you that? Do you have any questions of any of us about your decision?
BLAIR: No, sir, I don't.
COUNSEL: Very good. Tell us what your decision is.
BLAIR: I choose not to testify.

Blair's current claim is flatly contradicted by the trial record. His claim thus fails. *See Stouffer v. State*, No. 12-0932, 2013 WL 5498060, at *5-6 (Iowa Ct. App. Oct. 2, 2013).

In addition to not establishing a breach of duty, Blair has not established prejudice. In his postconviction testimony, Blair admitted that he did not know what his testimony at trial would have been had he decided to testify and that he would have had to admit he conspired to and had the specific intent to kill Shane Hill. There is nothing in this record indicating Blair's testimony would have been exculpatory or otherwise resulted in a different outcome. Indeed, it appears that Blair's trial testimony would have been inculpatory and duplicative of his confession.

III.

For the foregoing reasons, we affirm the judgment of the district court.

**AFFIRMED.**