# IN THE COURT OF APPEALS OF IOWA

No. 14-0894
Filed October 14, 2015

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**DAVID EDWARD VRBA,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Wright County, Paul B. Ahlers,

Judge.


        A defendant appeals his conviction and sentence for assault while

displaying a dangerous weapon. **CONVICTION AFFIRMED; SENTENCE**

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED WITH**

**DIRECTIONS.**


        Mark C. Smith, State Appellate Defender, and Martha J. Lucey, Assistant

Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, Kevin Cmelik and Mary A. Triick,

Assistant Attorneys General, Eric Simonson, County Attorney, and Jonathan

Murphy, Assistant County Attorney, for appellee.


        Considered by Tabor, P.J., and Bower and McDonald, JJ.

**TABOR, Presiding Judge.**

A jury convicted David Vrba of assault while displaying a dangerous weapon after hearing testimony that he pointed a shotgun at his mother and pushed her over a coffee table. On appeal, Vrba argues the jury should not have been allowed to consider evidence that he engaged in a "standoff" with police after his mother fled from the house. He further argues his attorney was remiss in (1) not challenging the State's proof he used or displayed the shotgun, (2) not objecting to testimony concerning the mother's possession of pepper spray to protect her from Vrba, and (3) not requesting a limiting instruction concerning the pepper spray and the "standoff." Vrba also challenges his sentence.

Because we conclude the evidence of Vrba's delayed arrest was inextricably intertwined with the assault, we affirm on the evidentiary challenge. We find no prejudice from counsel's challenge to the sufficiency of the evidence but preserve the remaining ineffectiveness claims. On the sentencing question, we conclude the court properly exercised its discretion in denying a deferred judgment, but we vacate the probationary condition prohibiting Vrba from being at private locations where alcohol or controlled substances are present.

## I.    Background Facts and Proceedings

"This is Marilyn Vansickel. My son's flipping out." So started the emergency call Vansickel placed to police from outside the home of her son David Vrba on December 2, 2013. Vansickel told the Wright County dispatcher Vrba placed his hands on her and took away her keys so she could not leave. Vansickel also informed the dispatcher that Vrba was armed with a shotgun,

which he had pointed at his mother several times during their tense encounter. Vansickel recounted that Vrba tried to push her over the coffee table, but she did not hit the floor. As the police closed in on her son's house, Vansickel said she "really didn't want him killed, but he needs help."

After several hours of waiting for him to emerge from his house, authorities eventually arrested Vrba. The State charged him with assault while displaying a dangerous weapon and false imprisonment.[1]

At trial, Vansickel proved to be a reluctant witness against her son.[2] She recalled going to his Eagle Grove house to help him move furniture. She found the house was a mess, and Vrba bristled when she chastised him about its condition. She testified Vrba heard a noise in the kitchen and picked up his shotgun from next to the living room couch. She continued: "He aimed into the kitchen." When the prosecutor asked if he carried the shotgun the whole time she was inside the house, she replied: "I was probably not there very long. But. Um. He had it like in his right hand. And he kept looking into the kitchen."

When the prosecutor asked if Vrba pushed her, Vansickel again equivocated: "I backed into the coffee table. . . . I don't know if I lost my balance or what. . . . I kind of fell over the coffee table backwards." She acknowledged Vrba grabbed her with his left hand as he held the gun in his right hand. Vrba

---

[1] The State originally included a count of assault on a health care provider in connection with Vrba's conduct toward a social worker at the hospital. The court found no probable cause to support the enhancement, amended the charge to a simple misdemeanor assault, and transferred it to the magistrate court.

[2] When asked if she had second thoughts about being involved in the case after Vrba was arrested, Vansickel said: "I wish it never would have happened . . . . Because things got blown out of shape."

manhandled his mother with such force that she had red marks on her shoulder despite wearing a heavy winter coat.

After Vansickel managed to get back to her feet, she fled from the house without her keys. She then called law enforcement for help. Vansickel acknowledged at trial that she was hiding behind a tree in a neighboring yard when she spoke with the dispatcher. When the officers arrived, in her words, "Everything went berserk after that."

Eagle Grove Police Chief Ray Beltran responded to Vansickel's call. She told the chief her son had pointed a shotgun at her, and she had grabbed the muzzle and pulled it away, telling him to stop. Chief Beltran used a cell phone to call Vrba, who stayed inside his house. Vrba sounded "very emotional." Beltran told him the police were there to help him—but he needed to step outside. The police also used a public address system in trying to communicate with Vrba. It took several hours for Vrba to come out of his house, but as the chief told the jury, "he finally came out on his own will." Chief Beltran recalled that when Vrba came out of the house, in his undershorts, he looked disoriented and acted like he was under the influence of something. Vrba told officers he had not slept for a couple of days and was paranoid that "people were trying to get him." Police transported Vrba to the hospital.

Police then obtained a search warrant for Vrba's house. Inside, officers recovered two shotguns, one inside of a dog kennel and one leaning against the living room couch. Police Captain Josh Kuisle testified the couch was "tipped at

an angle toward the front door. . . . Basically set up for a barricade situation. He had a fighting station set up there."

Vrba testified in his own defense. He denied pointing a weapon at his mother and claimed that he did not know police were outside of his house and he just fell asleep.

After just over an hour of deliberation, the jury returned a verdict of not guilty on the false imprisonment count, but found Vrba guilty of assault while displaying a dangerous weapon.

At sentencing, the district court rejected Vrba's request for a deferred judgment and imposed a sentence of 180 days in the county jail, with all but thirty days suspended, and placed him on probation for two years. As a condition of his probation, the court prohibited Vrba from being at locations where illegal drugs or alcoholic beverages were present, even if he was not consuming or possessing them. The court added an exception allowing Vrba to dine at restaurants that serve alcohol, "as long as that's not the primary focus of the business."

Vrba appeals his conviction and sentence.

## II.    Scope and Standards of Review

We review the district court's ruling on admissibility of the "standoff" evidence for an abuse of discretion. *State v. Putman*, 848 N.W.2d 1, 7 (Iowa 2014). An abuse occurs when the district court exercises its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable. *Id.* Even if the district court has abused its discretion, the defendant must show

prejudice before we will reverse. *Id.* We also review Vrba's sentence for an abuse of discretion; any abuse of discretion necessarily results in legal error. *See State v. Valin*, 724 N.W.2d 440, 444 (Iowa 2006).

Vrba's claims of ineffective assistance, because of their constitutional implications, call for de novo review. *State v. McNeal*, 867 N.W.2d 91, 99 (Iowa 2015).

## III. Analysis of Vrba's Arguments

### A. Did the district court abuse its discretion in admitting evidence of Vrba's "standoff" with police?

Before trial, when considering Vrba's motion in limine, the district court ruled the State could offer evidence of the "prolonged standoff, if you will, between law enforcement and Mr. Vrba." But the court prohibited the State from revealing the detail that local schools were locked down during that time period. At an earlier hearing, the court stated the span of time before Vrba left the house was relevant and "largely kind of the res gestae of the crime."

In its written ruling, the court concluded such evidence was not "improper character or bad acts evidence that would be made inadmissible pursuant to Rule 5.404, as claimed by Defendant." But even if the evidence fell into that framework, the court declared the evidence admissible as proof of "motive, opportunity, intent, preparation, knowledge, identity, or absence of mistake or accident." The court also further ruled the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice under rule 5.403. We find Vrba preserved error on this issue by securing the court's final ruling on admissibility of the evidence. *See State v. Alberts*, 722 N.W.2d 402, 406 (Iowa

2006) (explaining that "if the ruling reaches the ultimate issue and declares the evidence admissible or inadmissible, it is ordinarily a final ruling and need not be questioned again during trial").

On appeal, Vrba contends the district court should have excluded the evidence of his "standoff" with police under Iowa Rules of Evidence 5.403[3] and 5.404(b).[4] He first asserts the record did not establish "clear proof" that he actually engaged in behavior that constituted a "standoff." Vrba disputes Captain Kuisle's characterization of the "barricade situation" in the living room and points to his own testimony that he did not want to talk to anyone and just went to bed. Vrba further claims his conduct subsequent to the alleged assault of his mother was not relevant to show his intent, motive, opportunity, or consciousness of guilt. Vrba also argues the doctrine of inextricably intertwined evidence does not allow for admission of the purported "standoff" in this case.

The State points out the only mention of the term "standoff" in front of the jury came during defense counsel's questioning of Chief Beltran.[5] The State further argues that its evidence showed Vrba "initially refused to leave his home upon the request of law enforcement and that, after a few hours, the defendant

---

[3] "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Iowa R. Evid. 5.403.

[4] Iowa Rule of Evidence 5.404(b) provides:
> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

[5] Q. So it wasn't in fact until about an hour into the standoff that [Vansickel] even mentioned a shotgun; isn't that correct? A. . . . I'll keep with my statement. Correct.

voluntarily surrendered." The State argues the captain's testimony that it appeared Vrba had moved furniture to create some sort of barricade was in response to cross examination suggesting Vrba did not know the police were outside his home.

The State further contends the disputed testimony "was not evidence of character or bad acts at all but rather the res gestae of the crime." The State noted the common law principle of res gestae has evolved into the inextricably intertwined doctrine. *See State v. Nelson*, 791 N.W.2d 414, 421 (Iowa 2010) (quoting Edward J. Imwinkelried, *The Second Coming of Res Gestae: A Procedural Approach to Untangling the "Inextricably Intertwined" Theory for Admitting Evidence of an Accused's Uncharged Misconduct,* 59 Cath. U. L. Rev. 719, 728–29 (2010) (arguing inextricably intertwined doctrine is "modern de-Latinized" equivalent of res gestae)).

Evidence that is "'inextricably intertwined' in a causal, temporal, relational, or spatial sense with the charged offense" need not be excluded under rule 5.404(b). *State v. Caples*, 857 N.W.2d 641, 645 (Iowa Ct. App. 2014). Such evidence does not point to *another* crime, wrong, or act but instead is closely related to the charged crime. *Id.* The key question is whether omitting the challenged evidence would have "left the narrative of this crime unintelligible, incomprehensible, confusing, or misleading." *See Nelson*, 791 N.W.2d at 424. Our supreme court has cautioned that "the inextricably intertwined doctrine should be used infrequently and as a narrow exception to the general rule

against admitting evidence of other crimes, wrongs, or acts." *Nelson*, 791 N.W.2d at 423.

We believe this case fits within that narrow exception. The circumstances immediately following the reported assault and culminating in Vrba's arrest a few hours later were intrinsic to the charged crime. The testimony of Vansickel and the officers would have been confusing and incomplete without mention of the officers' efforts to coax Vrba from the house and the subsequent search of the crime scene, which resulted in seizure of the shotgun used in the assault. *See State v. Walters*, 426 N.W.2d 136, 140–41 (upholding admission of evidence that defendant sexually abused victim after the kidnapping to complete the story of the crime). Courts in other jurisdictions have reached similar conclusions regarding the admissibility of events closely tied to the charged act in time and location. *See, e.g.*, *United States v. Hood*, 774 F.3d 638, 644 (10th Cir. 2014) *cert. denied*, 135 S. Ct. 2370 (2015) (upholding government's use of evidence of uncharged acts necessary to "contextualize the defendant's arrest as intrinsic evidence not subject to Federal Rule of Evidence 404(b)"); *Ordway v. Commonwealth*, 391 S.W.3d 762, 790–91 (Ky. 2013) ("It is difficult to conceive how the events that immediately followed the shooting could be omitted without impairing the jury's ability to understand the whole event."). Vrba's post-crime, pre-arrest conduct was relevant and admissible under the inextricably intertwined doctrine.

We recognize even relevant and otherwise admissible evidence must be excluded when its probative value is substantially outweighed by the danger of

unfair prejudice. *See* Iowa R. Evid. 5.403. "Unfair prejudice arises when the evidence would cause the jury to base its decision on something other than the proven facts and applicable law, such as sympathy for one party or a desire to punish a party." *State v. Reynolds*, 765 N.W.2d 283, 290 (Iowa 2009). We do not believe the State's evidence that Vrba stayed inside his house and possibly moved furniture prompted the jurors to reach their verdicts based on sympathy or a desire to punish. The State's witnesses did not characterize the situation as a "standoff." Captain Kuisle's description of Vrba's living room as a "barricade situation" or a "fighting station" was disputed by the defense case. It was up to the jury whether to credit Vrba's testimony explaining both the interaction with his mother and his conduct after his mother alerted police.

To convict Vrba of aggravated assault, the State was required to offer proof Vrba intentionally pointed a firearm toward Vansickel or displayed a firearm in a threatening manner toward her. To convict Vrba of false imprisonment, the State was required to prove he intentionally confined Vansickel against her will. A defendant's post-crime conduct may be relevant to show his or her intent at the time of the offense. *See State v. Shanahan*, 712 N.W.2d 121, 138 (Iowa 2006) (finding prejudicial effect of other-acts evidence did not substantially outweigh their probative value). Vrba's emotional reaction to Chief Beltran's call and his protracted refusal to submit to police authority was probative of the intentional nature of his actions while his mother was inside the home. We do not believe rule 5.403 required exclusion of the evidence challenged by Vrba on appeal.

The district court did not abuse its discretion in allowing testimony concerning the activity leading up to Vrba's arrest.

**B. Did defense counsel perform below constitutional expectations?**

Vrba raises three complaints about the performance of his trial attorney. To succeed on his claims of deficient representation, Vrba must show two elements by a preponderance of the evidence: (1) trial counsel failed to perform an essential duty and (2) this failure resulted in prejudice. *See State v. Webster*, 865 N.W.2d 223, 231 (Iowa 2015); *see also Strickland v. Washington*, 466 U.S. 668, 687 (1984). If Vrba fails to show prejudice, we need not address whether the attorney failed to perform an essential duty. *See Webster*, 865 N.W.2d at 231. Because Vrba chose to raise his ineffective-assistance-of-counsel claims on direct appeal, we may either determine the record is adequate and decide the claims or find the record is inadequate and preserve them for postconviction proceedings so Vrba may develop a more complete accounting. *State v. Neitzel*, 801 N.W.2d 612, 624-25 (Iowa Ct. App. 2011).

Vrba first claims his attorney, in moving for judgment of acquittal, breached a material duty by failing to challenge the State's proof for the element of using or displaying a dangerous weapon in connection with the assault. On the prejudice prong, Vrba contends because of counsel's omission, the jury was allowed to find him guilty under a theory lacking in evidentiary support.

We bypass the duty question and skip to the prejudice prong. We reject Vrba's claim because a more specific motion would not have been successful. The State presented substantial evidence—through the dispatch call and

Vansickel's live, albeit unenthusiastic, testimony—establishing Vrba grabbed and pushed her, causing her to fall over the coffee table. He did so while holding a shotgun. The evidence showed Vrba pointed the gun at Vansickel more than once during their encounter inside the house. The State's proof created a jury question on all of the statutory alternatives of assault presented in the instructions. Counsel's formulation of the motion for judgment of acquittal did not result in prejudice to Vrba. *See State v. Scalise*, 660 N.W.2d 58, 62 (Iowa 2003) (concluding even if trial counsel could have made a more specific motion for judgment of acquittal, a claim of ineffective assistance of counsel cannot be established if the State's evidence was sufficient to generate a jury question on defendant's guilt).

Vrba's second claim of ineffective assistance of counsel involves Vansickel's habit of carrying pepper spray. Vrba claims his attorney should have objected to Vansickel's testimony that she was prepared to use the spray as protection from Vrba on a prior occasion. Vrba's third claim of ineffective assistance focuses on counsel's failure to request a limiting instruction regarding "other wrongful acts"—specifically his conduct in relation to the "standoff" and pepper spray evidence. The record does not show whether counsel may have had strategic reasons for not raising pursuing these issues. Because the record is inadequate to decide these two claims of ineffective assistance of counsel, we preserve them for possible postconviction-relief proceedings. *See State v. Coil*, 264 N.W.2d 293, 296 (Iowa 1978) ("Even a lawyer is entitled to his day in court, especially when his professional reputation is impugned.").

**C. Did the district court abuse its discretion in sentencing Vrba?**

Vrba first contends the district court, in denying his request for a deferred judgment, violated the principle in *State v. McKeever*, 276 N.W.2d 385, 387 (Iowa 1979), that no one sentencing factor be determinative. Vrba contends the court relied only upon the nature of the offense at the expense of all other considerations in Iowa Code section 907.5 (2013).

We do not read the district court's reasons for sentencing as violating *McKeever*. The court expressly stated that it was taking into account Vrba's employment, his family circumstances, and his limited prior criminal history. The court said the sentence would have been "much harsher" but for the "positive things presented to me here today." Yet the court rejected Vrba's request for a deferred judgment based on the "obviously unacceptable" and "very dangerous behavior" he carried out against his mother. The jail sentence and probationary period did not amount to an abuse of discretion. *See State v. Formaro*, 638 N.W.2d 720, 724 (Iowa 2002).

Vrba next argues the district court imposed an unreasonable condition of probation. The following paragraph of the sentencing order is at issue:

> Defendant is prohibited from consuming or possessing alcohol or any illegal drug or any drug for which Defendant does not have a valid prescription. In addition, Defendant is prohibited from being at any location where alcohol or illegal drugs are present, regardless of whether Defendant is actually in possession of or consuming such alcohol or illegal drugs. This prohibition does not prohibit Defendant from being at a public location (e.g., restaurant) where alcohol is served, so long as the primary purpose of the establishment is not the serving of alcohol and Defendant is not consuming or in possession of alcohol at that location[.]

Specifically, Vrba argues it was unreasonable for the court to prohibit him from being at private locations where alcoholic beverages or controlled substances are present, even if Vrba is not in possession of or consuming those substances. Vrba notes the court's order allows him to spend "extended time periods in a public restaurant surrounded by others consuming alcohol. But the conditions of probation prohibit him from riding in a vehicle where there is a container of alcoholic beverage in the trunk" and would "prohibit him from visiting friends and family who have beer in the refrigerator."

People placed on probation are subject to the conditions established by the judicial district department of correctional services (DCS) subject to the approval of the court, as well as any additional "reasonable conditions" which the court or DCS may impose "to promote rehabilitation of the defendant or protection of the community." Iowa Code § 907.6. A condition of probation is reasonable when it relates to the rehabilitative needs of the defendant or the protection of the community and is justified by the defendant's personal circumstances. *See Valin*, 724 N.W.2d at 446. A condition of probation is unreasonable if it is unnecessarily harsh or excessive in achieving the goals of rehabilitation or public protection. *Id.* Vrba argues the probationary condition prohibiting him from consuming or possessing alcohol or controlled substances, without a valid prescription, is sufficient to promote the goals of rehabilitation.

We agree with Vrba that it is an unreasonable condition of probation to forbid him from entering a private residence or vehicle where alcohol or controlled substances are present, even if they are not being consumed. It is

unnecessarily harsh to expect Vrba to inspect the homes or vehicles of friends or relatives for prohibited substances before entering. We make the following amendment to the paragraph at issue:

> Defendant is prohibited from consuming or possessing alcohol or any illegal drug or any drug for which Defendant does not have a valid prescription. In addition, Defendant is prohibited from being at any business establishment whose primary purpose is the serving of alcohol.

We otherwise affirm the sentence imposed. We remand for entry of a corrected sentencing order consistent with this ruling.

**CONVICTION AFFIRMED; SENTENCE AFFIRMED IN PART, VACATED IN PART, AND REMANDED WITH DIRECTIONS.**