# IN THE COURT OF APPEALS OF IOWA

No. 23-1063
Filed June 5, 2024

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**ALISON ELAINE DORSEY,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Cass County, Amy Zacharias, Judge.


        Defendant appeals her convictions for second-degree murder and child endangerment causing death.  **AFFIRMED.**


        William L. Kutmus and Trevor Hook of Kutmus, Pennington & Hook, P.C., West Des Moines, for appellant.

        Brenna Bird, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.


        Considered by Tabor, P.J., and Greer and Schumacher, J.J.

**SCHUMACHER, Judge.**

Alison Dorsey appeals her convictions for second-degree murder and child endangerment causing death, both class "B" felonies. On appeal, she raises five challenges. Dorsey asserts the venue change from Cass County to Pottawattamie County was improper, the verdict was not supported by substantial evidence, evidence of a child's rib injury was improperly admitted, she was unfairly deprived of her right to call additional witnesses as to her relevant character traits, and the court erred in denying her motion for a new trial.

## I.      Background Facts and Proceedings

Dorsey had run an in-home daycare since 2002. In 2019, she was operating her daycare in Massena, Iowa. Eleven-week-old L.H. and his twin's first day of daycare was October 7, 2019. The twins' two older siblings had attended Dorsey's daycare. But on October 7, only one of the older siblings accompanied the twins to daycare, as the other had school that day.

L.H.'s father dropped the twins and their two-year-old sibling off at daycare that morning before work, a little before 8:00 a.m. Dorsey was caring for ten children at her daycare that day, three children under the age of one, the oldest child being four years old.[1] Shortly before 9:00 a.m., Dorsey sent a photo of the twins to the parents commemorating their first day of daycare. Dorsey placed a phone call to the mother at 10:35 a.m., describing that L.H. was "breathing funny," and he "wouldn't eat." Dorsey called the father at about 10:55 a.m. In the phone calls with the mother and father, Dorsey did not relay any serious medical

---

[1] Three more children were scheduled to be dropped at Dorsey's daycare after preschool on October 7.

concerns. The father, who worked about four blocks from the daycare, decided to go to the daycare on his break to check on L.H. He arrived at the daycare at 11:00 a.m. to find that L.H. was limp, bluish-grey, and not breathing. Dorsey claimed L.H. went limp just as his father arrived at the daycare. The father attempted to administer CPR and instructed Dorsey to call 911. Dorsey had not called for medical assistance. L.H. was taken to a local hospital where his heart was restarted before he was life-flighted to Children's Pediatric Hospital in Omaha (Children's).

L.H. received a CT scan which revealed "blood in the deep membranes separating the brain," and "a diffuse pattern of blood and blood involving the deep membranes," which "implies a rapid acceleration-deceleration type injury." This means "the brain is . . . moving rapidly inside [the] skull, tearing the bridging veins that are . . . between the brain and the skull." The appearance of the blood in the CT scan also suggested the injury was recent. The radiologist indicated the CT scan suggested continued swelling of L.H.'s brain, consistent with an injury that happened "fairly recently." The radiologist and another pediatric ICU physician from Children's also testified that L.H.'s injuries were "highly suspicious for abusive head trauma." "Abusive head trauma" was previously referred to as "shaken baby syndrome." L.H. never regained consciousness and was taken off life support on October 8. He died the same day.

Dorsey was charged with first-degree murder and child endangerment resulting in death. Dorsey's first criminal jury trial began in Cass County in October 2021. The seven-day trial resulted in a hung jury, and the district court declared a mistrial. The State later moved for a change of venue, citing extensive

pretrial publicity on social media which reflected a community deeply divided over the case. Dorsey did not file a written resistance but orally resisted the State's motion at hearing. The district court granted the State's motion for a change of venue based on the publicity surrounding the case and the court's experience during jury selection in Dorsey's first trial. Venue was transferred to Pottawattamie County.

A second jury trial began in May 2023. The State's witnesses included but were not limited to L.H.'s pediatrician, a pediatric radiologist, a pediatric intensive care unit physician, a child abuse pediatrician, and an associate medical examiner. The defense's witnesses included but were not limited to a retired physician, a pathologist, and a biomedical/mechanical engineer. The State called a pathologist and neuropathologist as a rebuttal witness.

Dorsey elicited testimony on rib injuries sustained by L.H.'s older sibling but objected when the State attempted to introduce evidence of the possible origins of those injuries. The court allowed the State to present that evidence.

Dorsey sought to present twelve witnesses who would testify to her peaceful and loving character. The court permitted six of these witnesses to testify, finding additional witnesses would be cumulative.

The jury returned a guilty verdict on the child endangerment resulting in death charge and on a lesser included offense of murder in the second degree on May 9, 2023. Dorsey filed a motion to dismiss and motion for a new trial. The district court denied the motion for a new trial and merged the convictions. Dorsey was sentenced to an indeterminate term of incarceration of fifty years, with a mandatory minimum of thirty-five years. Dorsey appeals.

## II.  Analysis

On appeal, Dorsey argues the change in venue was improper, the verdict was not supported by substantial evidence, evidence of a child's rib injury was improperly admitted, she was deprived of her right to call witnesses about relevant character traits, and the court erred in denying her motion for a new trial.  We address each argument in turn.

### A.  Change of Venue

Dorsey contends the district court improperly granted the State's motion for change of venue.[2]  We review a district court ruling on change of venue for abuse of discretion.  *State v. Walters*, 426 N.W.2d 136, 138 (Iowa 1988).  Iowa Rule of Criminal Procedure 2.11(10)(b) (2021) states:

> If the court is satisfied from a motion for change of venue and the evidence in support of the motion that such degree of prejudice exists in the county in which the trial is to be held that there is a substantial likelihood a fair and impartial trial cannot be preserved with a jury selected from that county, the court . . . shall order the action be transferred to another county in which the offensive condition does not exist. . . .

While in many cases, it is the defendant that moves for a change of venue, the rule does not distinguish between motions from the prosecution or defense, so the principles remain the same.  *See State v. Paulsen*, 293 N.W.2d 244, 247–48 (Iowa 1980) (considering abuse of discretion in a change of venue requested by the State due to "pretrial media publicity.").  In determining whether a change of

---

[2] Dorsey also contends venue should not have been moved to Council Bluffs because of the city's proximity to Children's in Omaha.  But Dorsey never argued this at the change of venue hearing and the district court never ruled on it.  Therefore, this issue was not preserved, and we do not address it further.  *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002).

venue is warranted, "[t]he crucial determination is whether, as a result of pretrial publicity or for other reasons, a substantial number of prospective jurors hold such fixed opinions on the merits of the case that they cannot impartially judge the issues." *State v. Farmer*, 492 N.W.2d 239, 241 (Iowa Ct. App. 1992). But "[m]ere exposure to news accounts does not amount to a substantial likelihood of prejudice." *Walters*, 426 N.W.2d at 138. To show a change of venue was warranted, the moving party must demonstrate either "(1) publicity attending the trial that is so pervasive and inflammatory that prejudice must be presumed, or (2) actual prejudice on the part of the jury." *State v. Siemer*, 454 N.W.2d 857, 860 (Iowa 1990). Publicity surrounding a case can establish presumptive prejudice, but that coverage must be "pervasive and inflammatory." *Id.* "Whether publicity rises to the level of being presumptively prejudicial depends on the following factors: the nature, tone, and accuracy of the articles; their timing in relation to the trial; and the impact of the publicity on the jurors as revealed through voir dire." *Id.* Voir dire is an important tool to be used in determining whether prejudice exists among potential jurors. *Walters*, 426 N.W.2d at 138. Because of the trial court's position in this process, we give deference to the court's judgment on juror bias exposed in voir dire. *Siemer*, 454 N.W.2d at 861.

> Voir dire testimony that appears ambivalent or contradictory on a cold record is known to be more accurately assessed by the trial court who hears the jurors firsthand and who understands that the testimony is often the product of leading questions and cross-examination tactics employed by counsel against jurors who, unlike witnesses, have no briefing by lawyers prior to taking the stand.

*Id.*

The State attached around 100 pages of newspaper articles and Facebook posts, pages, and comments discussing the facts to their motion for a change in venue. Dorsey argues these examples of publicity were mostly unbiased, and at best they simply show an awareness of the case. And courts have sometimes been skeptical of social media activity that could come from outside the community from which the jury will be selected. *See United States v. Warren*, 989 F. Supp. 2d 494, 500 (E.D. La. 2013); *United States v. Diehl-Armstrong*, 739 F. Supp. 2d 786, 799–800 (W.D. Pa. 2010).

We do not agree that the social media posts simply show an awareness of the case. And the court did not rely exclusively on these social media examples in determining whether a change in venue was warranted. The court spent significant time discussing the unique circumstances of this case in which a previous jury selection had already happened, and it ultimately ruled "[i]t is clear from jury selection that there is a substantial likelihood that a fair and impartial jury cannot be selected in Cass County." The court based this determination on its observation of sixty-seven individual voir dire interviews, where fifty-five individuals knew something about or someone involved in the case, and forty-one of those individuals "said they had an incoming bias . . . no amount of evidence would change." As the court noted, this is starkly different from cases in which venue was not changed. *See State v. Finn*, No. 18-0181, 2020 WL 5943992, at *4 (Iowa Ct. App. Oct. 7, 2020) (observing "[t]he court noted that '77% of the potential jurors responded that they could be fair and impartial jurors'").

Dorsey focuses on the court's use of the language "it is better to err on the side of caution," arguing this shows the court applied the wrong standard and could

not have possibly found sufficient evidence meriting a change in venue. But this argument ignores the court's extensive analysis of the previously-conducted jury selection. And because we defer to the district court's determinations on prejudice displayed in voir dire, *Siemer*, 454 N.W.2d at 861, we cannot say the court's decision to grant the change of venue based on those observations and the information contained in the State's motion was an abuse of discretion.

B.  Sufficiency of the Evidence

Dorsey argues the verdict was not supported by substantial evidence. We review challenges to the sufficiency of the evidence for correction of errors at law. *State v. Crawford*, 972 N.W.2d 189, 202 (Iowa 2022).

In our review of sufficiency of the evidence we are deferential to the jury's verdict, and it will be upheld so long as it is supported by substantial evidence. *Id.* "Substantial evidence is evidence sufficient to convince a rational trier of fact the defendant is guilty beyond a reasonable doubt." *Id.* "[W]e view the evidence in the light most favorable to the State." *Id.* But "[t]he evidence must raise a fair inference of guilt and do more than create speculation, suspicion, or conjecture." *State v. Webb*, 648 N.W.2d 72, 76 (Iowa 2002). The jury's verdict binds this court if supported by substantial evidence. *State v. Tipton*, 897 N.W.2d 653, 692 (Iowa 2017). "What weight to give competing testimony is a credibility issue, one properly left to the fact-finder." *Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993).

Dorsey argues the State failed to present substantial evidence showing beyond a reasonable doubt that Dorsey inflicted the injuries causing L.H.'s death. Dorsey points to her long history, nearly twenty years, of offering daycare services

with no reported incidents of Dorsey harming any children previously. She also argues the expert testimony she presented, which she claims showed L.H.'s injuries were in an advanced stage of the healing process, establishes a reasonable doubt.

But "[e]vidence is not rendered insubstantial merely because it might support a different conclusion; the only question is whether the evidence supports the finding actually made." *State v. LuCore*, 989 N.W.2d 209, 216 (Iowa Ct. App. 2023). The State presented evidence Dorsey was the only person with L.H. that morning, and that L.H.'s injuries were the result of a recent abusive head trauma. This included testimony from an expert witness that L.H.'s injury were such that he could not have participated in "tummy time" after the injuries, as set forth in Dorsey's timeline from the morning of October 7. Expert testimony was also presented that there was no possibility that the injuries occurred days before October 7 and that the symptoms from the injuries would be immediate. The jury heard from L.H.'s parents and from Dorsey, both through law enforcement interviews conducted shortly after L.H.'s death and Dorsey's testimony at trial. In our role as an appellate court, we view the evidence in the light most favorable to the State, and we are deferential to the jury's verdict. We conclude the record before this court demonstrates that the State presented substantial evidence to support Dorsey's convictions. *See Crawford*, 972 N.W.2d at 202.

## C. Evidence of Sibling's Rib Injury

Dorsey challenges the admission of evidence related to the possible origin of a rib injury suffered by L.H.'s two-year-old sibling, K.H. Dorsey argues text message evidence of the possible origin of K.H.'s rib injury was inadmissible prior

bad act evidence. "We review the district court's evidentiary rulings for abuse of discretion." *State v. Thompson*, 836 N.W.2d 470, 476 (Iowa 2013).

Sometime after L.H.'s death, several children who had received care from Dorsey underwent bone scans.[3] This included L.H.'s two-year-old sibling, K.H. K.H.'s bone scan revealed a prior rib injury or fracture. This rib injury was first brought up during trial when Dorsey's attorney questioned the doctor who conducted the bone scans about the results, eliciting testimony K.H. had a "healing rib fracture," and that five other children who received scans showed no injuries. After this questioning, the State introduced evidence, over Dorsey's objection, that Dorsey had texted K.H.'s parents that K.H. fell from a height and suffered a bruise. Dorsey argues the evidence of the text message is prior bad act evidence which was only introduced to show she has a propensity to injure children in her care. The State argues this evidence was introduced only after Dorsey opened the door to it by eliciting testimony on the rib injury and was necessary to rebut the insinuation that K.H. and L.H.'s parents must have been responsible for their injuries.

Iowa Rule of Evidence 5.404(b)(1) states: "Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." However, "[t]he rule allows introduction of otherwise inadmissible evidence when an opponent has opened the door." *State v. Jones*, 471 N.W.2d 833, 835 (Iowa 1991).

---

[3] Not all of the children that attended Dorsey's daycare participated in the bone scans.

> Our prior cases recognize an "opening the door" principle of evidence. This rule pertains to the ability of a party to rebut inadmissible evidence offered by an adversary and provides that "one who induces a trial court to let down the bars to a field of inquiry that is not competent or relevant to the issues cannot complain if his adversary is also allowed to avail himself of the opening."

*State v. Parker*, 747 N.W.2d 196, 206 (Iowa 2008) (quoting *State v. Mitchell*, 670 N.W.2d 416, 420 (Iowa 2003)). And evidence of prior bad acts have been admitted in the past to refute theories of the defense:

> We believe [defendant's] direct examination of [the witness] was also in furtherance of this theory of the case and thus opened the door to refutation of that theory in the State's cross-examination. The questions asked on direct examination by [defendant] did not necessarily open the door, but the inference he sought to draw from the questioning did. Thus, the State was entitled to rebut this conspiracy theory with evidence of the actual facts. . . .

*Mitchell*, 670 N.W.2d at 421–22.

Dorsey sought to introduce evidence of K.H.'s rib injury and evidence of other children's lack of injuries, to create the inference that K.H.'s parents injured him and thus also injured L.H. By doing this, Dorsey "opened the door" to the introduction of evidence to refute this insinuation. *See id.* The State was entitled to introduce evidence of a possible source of K.H.'s injuries. *See id.*

D. Additional Character Witnesses

Dorsey argues that she "was unfairly deprived of her right to call witnesses respecting material and critical aspects of her relevant character traits." At trial, six witnesses testified to Dorsey's "peaceful and loving character," but six more were excluded by the trial court as cumulative. "We review the district court's evidentiary rulings for abuse of discretion." *Thompson*, 836 N.W.2d at 476.

Iowa Rule of Evidence 5.403 states: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . wasting time, or needlessly presenting cumulative evidence." The admission of cumulative evidence is "largely in the discretion of the trial court." *State v. Maxwell*, 222 N.W.2d 432, 435 (Iowa 1974). After all, "[t]he district court has the authority to set time limits and limit the number of witnesses at trial." *In re Marriage of Diercks*, No. 21-0869, 2022 WL 951047, at *5 (Iowa Ct. App. Mar. 30, 2022).

Dorsey requested to present the testimony of twelve witnesses in total. The court allowed the testimony of six, ruling the remaining witnesses were cumulative. Dorsey made an offer of proof, and the testimony of the additional excluded witnesses closely mirrored the testimony already presented. Because Dorsey presented the uncontested testimony of six witnesses on her character, and the testimony of the six excluded witnesses matched the testimony already admitted, we cannot find the court abused its discretion in excluding the evidence as cumulative. *See* Iowa R. Evid. 5.403; *State v. Lacey*, 968 N.W.2d 792, 807 (Iowa 2021); *Maxwell*, 222 N.W.2d at 435.

E. Motion for New Trial

Finally, Dorsey asserts that "even if the second jury's verdict is supported by substantial evidence it is not supported by the greater amount of the credible evidence." She asserts the weight of the evidence does not support the jury's verdict.

We review the district court's denial of a motion for a new trial asserting the verdict is against the weight of the evidence for abuse of discretion. *State v. Ary*, 877 N.W.2d 686, 706 (Iowa 2016). "A verdict is contrary to the weight of the

evidence only when 'a greater amount of credible evidence supports one side of an issue or cause than the other.'" *Id.* (quoting *State v. Shanahan*, 712 N.W.2d 121, 135 (Iowa 2006)).

This standard differs from sufficiency of the evidence as it allows the court to consider the credibility of witnesses, but it also requires "more evidence support[ ] the alternative verdict as opposed to the verdict rendered." *Id.* However, "a district court may invoke its power to grant a new trial on the ground the verdict was contrary to the weight of the evidence only in the extraordinary case in which the evidence preponderates heavily against the verdict rendered." *Id.* "[A] district court may invoke its power to grant a new trial on the ground the verdict was contrary to the weight of the evidence only in the extraordinary case in which the evidence preponderates heavily against the verdict rendered." *Id.* Unlike under the sufficiency-of-the-evidence standard, the court may weigh the evidence and consider witness credibility. *State v. Taylor*, 689 N.W.2d 116, 134 (Iowa 2004). But an appellate court's review is limited to the trial court's exercise of discretion and does not extend to the underlying weight-of-the-evidence question. *See id.*; *Ary*, 877 N.W.2d at 707.

In support of this claim, Dorsey again points to the testimony of experts at trial. She compares and contrasts the State's experts and the defense's experts, setting up a question of credibility. Dorsey asserts more credible expert testimony showed L.H.'s injury occurred before he was dropped off for daycare. To make this point, she alleges the State had to "attack the opinion of its own expert pathologist," because the manner of death was listed as "undetermined" rather than "homicide."

The State disagrees with this characterization of the expert testimony, and the record is inconsistent with Dorsey's assertion that the State attacked the opinion of its own expert. The State also presented significant expert testimony to undermine the defense's assertion that L.H.'s injuries occurred at an earlier time. Ultimately, "credibility of the witnesses is key in a weight-of-the-evidence determination." *State v. Reeves*, 670 N.W.2d 199, 207 (Iowa 2003). And in examining the weight of the evidence, the district court weighs the credibility of witnesses. *See Powers v. State*, 911 N.W.2d 774, 782 (Iowa 2018) ("In assessing a motion for new trial, the judge examines the weight of the evidence offered in the criminal trial, which includes a weighing of the credibility of the complaining witness.").

When the question was the credibility of one side's experts against the other side's experts, we cannot say the district court abused its discretion in denying Dorsey's motion for a new trial. We find no abuse of discretion.

## III.    Conclusion

We determine that the district court did not abuse its discretion in granting the State's motion for change of venue. We conclude substantial evidence supports the jury verdicts. The district court did not err in the admission of evidence of the sibling's injury nor in the denial of admission of an additional six character witnesses. We also determine the district court did not abuse its discretion in the denial of Dorsey's motion for a new trial. Accordingly, we affirm.

**AFFIRMED.**